## JOHN WISCHAM v. GEORGE RICKARDS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 21, 1890—Decided October 6, 1890.
[To be reported.]

1. A servant cannot, by any act of his, impose upon his master a higher liability for negligence than the master is under to the servant himself; and one who assists such servant in his duties, at the servant's request only, can have no other or different remedy against the master, for negligence, than the servant had.

2. That the person assisting can have no higher rights than the servant in the performance of whose duties he joins has, is not so much because he is a volunteer, as because he makes himself one of a class, who, as against the master, have no right of recovery for the negligent acts or conduct of each other.

3. Wherefore, as one who is engaged in the service of a common master, and in a common employment, cannot recover against the master for the negligence of a fellow-servant, whether paid for his service or not, so, if a stranger join at the request of a servant and is injured, he is in no better position than a mere volunteer.

4. Nor, when one joins in a service and is injured therein by the negligence of a servant, is the master's liability increased by the fact that such assistance was rendered by the person injured, in obedience to an order of his own superior, made in response to a call proceeding from the servant to whom the assistance was given.

Statement of Facts.

5. The same rule will apply where the work, in the doing of which the injury is received, is one in which the master of the person injured, and the master to whose servant, in response to the servant's call, the assistance of the injured party is rendered, are jointly interested, and the servants of both are employed to accomplish it.

6. Potter v. Faulkner, 1 B. & S. (101 E. C. L.) 800; Flower v. Penna. R. Co., 69 Pa. 210; Degg v. Railway Co., 1 H. & N. Exch. 773, followed: Abraham v. Reynolds, 5 H. & N. Exch. 143; and Wright v. Railway Co., L. R. 1 Q. B. Div. 252, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 155 July Term 1889, Sup. Ct.; court below, No. 65 June Term 1887, C. P. No. 2.

On May 5, 1887, John Wischam brought trespass against Charles A. Blessing and George Rickards, to recover damages for injuries received through the alleged negligence of defendants. Issue.

At the trial on November 22, 1887, the plaintiff's case having been closed, on motion of the defendants a judgment of nonsuit was entered, with leave, etc. On February 24, 1888, a rule to show cause why judgment of nonsuit should not be taken off having been argued, the rule was made absolute as to defendant Rickards only.

At a second trial on October 18, 1888, the facts made to appear were in substance as follows:

The defendant Rickards was a machinist who had entered into a contract to deliver to the other defendant, Blessing, a large fly-wheel ten feet in diameter and weighing five thousand pounds. Blessing was a manufacturer of plumbing goods, and Wischam was in his employ as a packer. The wheel was brought to Blessing's place of business for delivery, on November 2, 1886, in two sections, in charge of three men, Harvey, Hubert and Donovan. The first section of the wheel, one half of it, was brought between nine and ten o'clock in the morning. A derrick and block and tackle were to be used to unload the section. To rig the derrick, it was suggested that the rope be fastened about a scantling placed within and across a window of the second story of the building; but, for greater safety, the rope, by direction of Mr. Blessing, was run around an inside wall of the second story and there fastened. The section

was then lowered safely from the wagon to the pavement.    At
the suggestion of Blessing, the derrick and rigging, which be-
longed to Rickards, were left in position to enable Blessing's
men to place the section within the building before the delivery
of the other section.    Blessing then went away and was absent
the remainder of the day.    His men constructed a platform
to the level of the doorway of the building, about two feet
high, and proceeded to lift the section from the pavement to the
platform by means of the block and tackle.    They had got the
section above the height of the platform, when the defendant's
workmen came with the other section.    The workman with the
wagon desired that the second section should be unloaded at
once.    The first section was then let down to the pavement
and stood on its edge between the platform and the building,
resting against the building.    The block and tackle were then
put to the second section on the wagon, and, after they had
lifted it from the wagon and had it above the platform, Harvey,
in the employ of Rickards, asked Wiegner, Blessing's foreman,
to call for assistance.    Wiegner called out Wischam, the plaint-
iff in this case.    When the section was being lowered upon
the platform, Wiegner used a pry to keep it from the wall and
Wischam had hold of the rope, standing outside the wheel
with Donovan behind him.    The section was in that position
when it became blocked, the upper part upon the section against
the wall, and the lower part upon the platform.    Harvey stop-
ped the lowering, got down from the wagon, and, standing on
the section, his exact position being disputed, unfastened the
chain or rope, when the section fell and turned over upon the
plaintiff inflicting severe injuries.

At the close of the testimony, the court, FELL, J., charged
the jury:

Before going into this question I had better call your atten-
tion to the law which must govern you in the consideration
of this case, which I will do by answering the points which have
been presented by the counsel for the defendant.    I have been
asked to say to you:

1. A master is not liable for the unauthorized negligent act
of a competent servant, occasioning injury to a person volun-
tarily assisting another servant in the performance of his duty.

In this case, the evidence is that the plaintiff was a person voluntarily assisting the servants of Mr. Blessing in the unloading and placing of the wheel, and that he was not employed by the defendant Rickards, or by any one for him.    Under these circumstances the verdict of the jury should be for the defendant.

Answer : I decline to so charge.[1]

2.  If the jury believe that the defendant Rickards sent reliable men to unload the wheel at Blessing's place of business, and that these men were proceeding to and did unload it in a proper way; in such case, notwithstanding the accident to the plaintiff, he would not be entitled to recover in this action, and their verdict should be for the defendant.

Answer: I affirm this point, it being understood that unloading it in a proper way includes their conduct throughout. The manner of unloading might be proper, and there still might be negligence in the details of carrying out the plan. If there was no negligence on the part of Mr. Rickards' men, there can be no recovery against him.

3.  If a stranger, invited by a servant to assist him at his work, is, while engaged in giving such assistance, injured by the negligence of another servant of the same master in the course of his employment, the stranger cannot hold the master responsible.    The stranger, by giving his assistance, cannot impose upon the master a greater liability than that in which he stands towards his own servant; and, if the master takes care that his servants are persons of competent skill and ordinary carefulness, he is not liable for any injury that one of them may receive from the negligence of another.

Answer: Gentlemen, I affirm this point, but you will consider what I say in answer to another point as to a stranger and a mere volunteer.[2]   '

4.  If the jury believe that the plaintiff in this case was asked by a servant of Mr. Blessing to assist in the unloading and placing of this wheel, and that the accident by which he was injured was caused by something done or omitted by one of the servants of Blessing, there can be no recovery against the defendant, and the verdict of the jury should be for the defendant.

Answer: I affirm that.

5.  If the jury believe that at the time the wheel was carried

to the place of business of Mr. Blessing, Mr. Blessing took charge of the delivery and placing thereof, and the defendant's men acted under his directions, in such case there could be no recovery for this accident against the defendant, and their verdict should be for him.

Answer: I affirm that point, gentlemen, but you will remember in this connection the testimony as to what Mr. Blessing did in the matter. When the wheel was delivered at his place, they attempted to unload it by placing a scantling across the window on the inside, and attaching ropes to that. Mr. Blessing, fearing that that would injure the walls of his building, which were not strong, directed that it be taken down and ropes passed around the inside wall of the building; that was done. That, gentlemen, had nothing to do with the accident. If the wall had pulled down; if any of the appliances which Mr. Blessing had put there had broken, then the responsibility would clearly rest upon him. The only other thing he did was to direct the erection of the platform the same height as the door, in order that the wheel might be lowered on it. As I said to you a moment ago, if the wall had pulled out, or the platform had broken, and caused the accident, Mr. Blessing would have been wholly responsible.[3]

6. If the jury believe that the unloading of this wheel was a dangerous operation, that is not enough to justify a verdict against the defendant, as the unloading was necessary; if the manner adopted, was as good as any that could have been adopted, it matters not how dangerous it was; and, if the jury believe that proper care was used in the manner of unloading this wheel, then their verdict should be for the defendant.

Answer: I affirm this point.

7. If the jury believe that the falling of that portion of the wheel, by which the plaintiff was hurt, was by the prying thereon, or working thereat, by some one in the employ of Mr. Blessing, then their verdict should be for the defendant.

Answer: I affirm that.

8. If the jury believe that the plaintiff, in pulling or dragging on the chain or rope attached to that part of the wheel, which fell over, caused the fall thereof, their verdict should be for the defendant.

Answer: I affirm that.

Charge of Court below.

9. If the jury believe that the presence of Mr. Blessing's wagon in the street at the curb prevented the escape of the plaintiff from the section of the wheel as it fell over, and that, but for the presence of that wagon, the plaintiff, by the exercise of due care, would have escaped, their verdict should be for the defendant.

Answer: I decline, gentlemen, to so charge you. If the presence of the wagon had caused the accident, this would be the case, but the wagon was not the proximate cause of the accident. Its presence was a circumstance to be considered by all the parties.[4]

10. In this case, according to the proofs, the plaintiff appears to have been a volunteer, or one who was not employed to act as he was acting when the accident occurred; if the jury believe that the plaintiff was thus a volunteer, their verdict should be for the defendant.

Answer: If, gentlemen, the plaintiff was merely a volunteer he cannot recover in this case. A volunteer is one who assists in work of this kind without an interest in it, and without any duty upon his part to do so; say, for instance, if a friend of Mr. Donovan or Mr. Harvey, whom they passed on the street, got on this wagon with them and went to Mr. Blessing's and assisted in unloading this wheel, Mr. Rickards would not have been responsible; or, if Mr. Kuhn, who was going to his dinner from Fourth and Montgomery Avenue, had assisted, he being a stranger and there being no duty on his part, no one could be responsible to him. You will remember that, according to the testimony of the plaintiff, he was directed by his superior, Blessing's foreman, to assist in this work. The direction of that foreman, it was testified, was made by the request of Mr. Harvey, the defendant's foreman, who was working there.[5]

11. If a man who was merely a passer-by on this street, at the time of the unloading of this wheel, had chosen to stop to watch the operation of unloading and placing, not being employed or authorized to assist in any way, and whilst thus stopping and watching had been hurt by the fall of the wheel, he would not have been entitled to recover damages.

Answer: I affirm that.

12. Moreover, if the jury believe that the plaintiff was engaged by the defendant's men to act as he did, then likewise

Charge of Court below.

he cannot recover on account of the act or omission of one of his associates, and their verdict should be for the defendant.

Answer : I refuse to so charge.   We must consider the word "engaged," in connection with all the testimony in the case.   If he were employed with them, then he could not recover; but, if, having an interest or a duty in the matter, he was requested by them to assist, it does not take away his right to recover.[6]

15. Upon the evidence in this case the verdict of the jury must be for the defendant.

Answer: Declined.[7]

If Mr. Rickards is to be held here, it must be on the ground of the negligence of his workmen.   Negligence is the want of care under the circumstances; a failure to act as careful men would have acted, as prudent men would have acted under the circumstances, in the same position.   The conduct of these men in charge of the wheel is to be considered in the light of their surroundings at that time, as matters then stood, and not with a knowledge which we have now of the danger, unless it was apparently or reasonably to be apprehended by them as prudent and careful persons. . . . .

Now, what are the facts?   He, Mr. Rickards, intrusted the delivery of this wheel to careful, experienced persons, who had been in his employ for a number of years.   They had safely raised this section of the wheel from the wagon and lowered it to the platform which had been erected by Mr. Blessing's men. When it was lowered to the platform, and was resting at a small angle against the other section of the wheel, which was between it and the wall, Mr. Harvey, who was standing on the wheel, unfastened the chain.   Now, the only cause assigned by the plaintiff for its falling is that it was nearly perpendicular, with the greater weight below; and, when the chain was taken off, toppled over of its own weight, or that Mr. Harvey, in getting down, stepped upon the edge, and his additional weight threw it over.   In either case, if it fell simply from the unfastening of the chain, or from Mr. Harvey's weight, you will consider whether such a consequence was to be reasonably apprehended.   If this was merely an accident, resulting not from their carelessness, not from any act which, as prudent men, they should have guarded against, but merely an accident, no one is responsible here.

There is another explanation of the cause of the falling of the wheel, which is suggested rather than proved by the testimony. It is this: Mr. Wiegner, who was Mr. Blessing's foreman, had been using a pry, as the wheel was lowered, to keep it out from the wall. It has been suggested that he continued the use of that pry when there was no longer any use for it, and after the chain had been removed. Another cause is, that the plaintiff, who had hold of a rope which was attached to that portion of the wheel nearest him, drew on it when the chain was taken off. These, gentlemen, are suggestions made in the argument of the case. It is for you to consider them, and give them what weight you consider proper. If this accident resulted from the negligence of the plaintiff himself; if there is any negligence on his part contributing to it, or if it resulted from the negligence of Mr. Blessing's foreman, then the defendant is not responsible. . . . .

The jury returned a verdict in favor of the plaintiff for $1,248. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal assigning for error:

1–7. The answers to the defendant's points.[1 to 7]

*Mr. Wm. W. Wiltbank*, for the appellant:

1. As it was the duty of Rickards merely to have the sections of the wheel delivered on the pavement, and as it was undisputed that Blessing had indicated a special manner of delivery, that is to say, upon a platform against his wall, it may reasonably be inferred that the control of the work at the stage when the accident happened was exclusively in Blessing through his foreman Wiegner, who called the plaintiff out and directed him to assist. If Blessing did not thus take charge of the delivery, the plaintiff, for the purposes of that delivery, was clearly either a co-employee with Rickards' men, or a volunteer. He certainly had no interest or right to be there, exclusive of the interest he had in his own employment. And by volunteering his services, under such circumstances, the plaintiff could have no greater rights as against the defendant Rickards, than would have existed had he been a co-employee with the others in Rickards' employ, in which case the defend-

Arguments.

ant would not be liable : Degg v. Railway Co., 26 L. J. Exch. 171; s. c. 1 H. & N. 773; Potter v. Faulkner, 21 L. J. Q. B. 30; s. c. 1 B. & S. 800. These cases are summarized in Smith on M. & S., *247 (Text Book Series, 217). The first point of the defendant should therefore have been affirmed; and his third and tenth points should also have been affirmed without qualification.

2. But, even if the plaintiff was not a volunteer, no evidence of negligence causing the accident was shown on the part of the defendant Rickards. He was absent from the scene of the accident, and had given no instructions which, in their performance, had led to the injury. His men had been directed merely to carry the sections to Blessing's place and there deliver them. Not a single act of any one of those men was shown from which any negligence on his part could be inferred. They proceeded in a regular and orderly manner; and, as to the special disposition of the sections, they complied with the instructions of Blessing. How could it be held that Rickards, as an absent principal or master, became liable under such circumstances? And only one theory as to the cause of the accident involved any of Rickards' men, to wit, the presence of Harvey upon the section. But the testimony of the experts showed this theory to be absurd. So slight a scintilla of evidence of negligence should not have been submitted to the jury.

3. If there was negligence causing the accident, did it arise while Blessing and his men had control of the work? By the defendant's fifth point, the court was asked to instruct that if the jury believed that Blessing took charge of the delivery and placing of the wheel, and Rickards' men acted under his directions, in such case there could be no recovery against Rickards. The point was affirmed, but with a qualification that indicated clearly that the jury were to consider only the acts that Blessing did in person, and not at all what he did through his subordinates. Thus, the attention of the jury was called to the two acts on the part of Blessing as exclusively comprising all that he did on the occasion in question; but the point involved a consideration of what he did by his agents, as well as what he did himself. The qualification of the answer was error.

4. If the negligence did not arise under Blessing's manage-

Arguments.

ment, did it arise while the plaintiff and the defendant's men were co-employees? Our twelfth point was to the effect that if the jury believed that the plaintiff was engaged by the defendant's men to act as he did, then he could not recover on account of the act or omission of one of his associates. Why should not the point have been affirmed as it stood? There was no magic in the word "engaged." The point did not indicate the distinction between engaged with the defendant's men and engaged by the defendant's men. Why should the court refer to it, and indicate that in the one case an interest or duty might entitle the plaintiff to recover, whilst in the other it might not? The plaintiff certainly had no interest or duty beyond earning his wages by his obedience to orders. If he were employed by Rickards' men, the same interest and duty existed as if he were requested by them to assist. It is respectfully submitted that the answer to the point was misleading.

*Mr. E. H. Hanson* (with him *Mr. E. F. Hoffman*), for the appellee:

1. The plaintiff was not a volunteer, or in the status of a co-employee with the workmen of the defendant. He was assisting to receive the goods of his own master, under orders from his superior. (1) The two sets of men were working under a distinct and separate direction; (2) each director was employed by a separate master; (3) and, finally, the work of each was entirely different. Mere co-operation or community of labor and ultimate purpose is not enough to make men fellow-servants. They are not fellow-servants unless they are all under the control and direction of a common master. The rule that a servant assumes the risk of the negligence of a fellow-servant, is based on the theory that a workman considers the character of the men employed by the master with whom he contracts, when he agrees to work for him. There can be no co-employment with a stranger, except the implied co-employment of a volunteer. The plaintiff and the defendant's servants not being under the same control, or forming part of the same establishment, there was no co-employment, and the plaintiff was entitled to recover: Abraham v. Reynolds, 5 H. & N. 143; Wright v. Railway Co., 1 Q. B. Div. 252.

Opinion of the Court.

2. "To constitute servants co-employees, it is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purpose:" PAXSON, C. J., in Lewis v. Seifert, 116 Pa. 646. See, also, Keystone Bridge Co. v. Newberry, 96 Pa. 246; Lehigh V. Coal Co. v. Jones, 86 Pa. 432. It is therefore necessary, to constitute co-employment, that the servants should contract with and work for a common master. That was not the case here. In Degg v. Railway Co., 26 L. J. Exch. 171; s. c. 1 H. & N. 773, cited by the defendant, Degg the plaintiff was receiving goods at a siding of the company. Some railroad hands were attempting to turn a track on a turntable near by. Degg, observing they were having difficulty, "called out to them to stop and he would help them." He then went to their assistance, and while pushing was injured. He was indisputably a volunteer. In this case it is equally clear that the plaintiff was acting under orders.

OPINION, MR. JUSTICE GREEN:

This case is an exceedingly close one, highly exceptional in its facts, and apparently without a precedent among the authorities. The defendant was delivering a heavy fly-wheel, weighing five thousand pounds, to a Mr. Blessing, at the factory of the latter. The wheel was divided into two equal sections, and the first of them had been delivered on the pavement in front of Blessing's factory in the morning. Blessing's men, under his direction, had put up a scaffolding as high as the door-way leading into the building, about two feet high, and had raised the section already delivered, up nearly to the top of the scaffold, when Rickards' men returned with the other section and insisted upon unloading it at once. The first section was then dropped down, and the chain taken off and fastened to the second section, and it was raised clear of the wagon and over the scaffold. Some difficulty was experienced with the rope and chain, and the section was dropped till it rested on the scaffold and against the wall. While in that position, Harvey, Rickards' foreman, climbed up on the wheel and loosened the chain and stepped down on the rim of the wheel, and it was claimed by the plaintiff his weight on the rim caused the wheel to topple over and fall on the plaintiff and injure

him.   It was testified by Weigel, as well as by Wiegner, Blessings' foreman, that while the wheel was being moved, just
about the time the chain became tangled, Harvey called for
help, and Wischam was either called for by Wiegner, or he
happened to be on the ground, and he assisted in moving the
wheel.   Wiegner and Weigel were Blessing's men, and they
were assisting, and when Wischam came up he was told, as he
testifies, by Wiegner to catch hold of the chain.   He does not
say whether he did so or not, nor does any other witness say
what he was doing at the moment of the accident, but they all
say that when the wheel fell he was under it.   There was a
lack of definite statement on this subject, and it does not appear that the attention of the witnesses was called to it in their
examination.   However, it is a fair inference that Wischam
was called by Wiegner to assist, and that he did assist in some
way, or was present for that purpose when he was injured.
Wischam says Wiegner called to him to come out and help,
and told him to take hold of the chain.   Wiegner says he don't
recollect calling him, but that he saw him around, and that he
did help.   As the court charged the jury that if Wischam was
a mere volunteer he could not recover, we will have to assume
that the jury believed his statement that he was directed by
Wiegner, who was his boss or foreman, to help, and did help
in consequence of that direction.   The case, on its facts, then,
stands thus : Wischam, being one of Blessing's men, assisted
in moving the wheel at the instance of Blessing's foreman, who
called for him by the request of Harvey, Rickards' foreman,
and received his injury whilst rendering assistance in these
circumstances.   The case, or rather the question of Rickards'
liability, is complicated by the fact that the movement of the
wheel was a joint movement in which both Blessing and Rickards were interested, and by the fact that Wischam acted under orders from his own foreman.   Rickards was certainly not
bound to put the wheel inside Blessing's building.   His delivery would have been complete when delivery on the pavement
or on the scaffolding was made.   The first section was completely
delivered when it was deposited on the pavement.   But Blessing wanted the wheel in the building, and while the men were
all there, that was what they were trying to do, and in that
act all the men were participants.   It is true the delivery from

the wagon on the platform was not quite completed when the accident happened, and, therefore, we think it must be regarded as having happened while the defendant's men were performing their act of delivery.

Now, it is perfectly clear that if the plaintiff was a mere volunteer, that is, assisted entirely of his own motion, by his own voluntary proffer of service, the defendant would not be liable. All the authorities are that way, and so the court charged the jury. The question is, if he assisted at the request of the defendant's servant, or in consequence of such request, is the defendant liable? There are two cases, one of which was cited in the paper-books, which have a very important bearing on that question. One of them is the case of Potter v. Faulkner, 101 E. C. L. R. (1 B. & S.) 800. The defendant's porters were lowering bales of cotton from the defendant's warehouse and his carter was receiving them into his lorry (small wagon). The plaintiff, who was waiting with a lorry to receive a load of cotton for his master, at the request of the defendant's carter assisted him, and in consequence of the negligence of the defendant's porters a bale of cotton fell upon and injured him. Held, that the defendant was not liable to an action. In the report of the case the following facts are stated amongst others: "The lorry which was being loaded at the time of the accident was the property of the defendant, and the parties above and the carter below were his servants, of which the plaintiff, before the accident, had notice. The carter of the defendant's lorry, which was being loaded in the manner before mentioned, requested the plaintiff, who was waiting with his master's lorry for his turn, to help him to move into their proper places in his cart the bales which were being lowered for him. The plaintiff thereupon got upon the defendant's lorry and was assisting him when the accident happened." The court, ERLE, C. J., said: "The plaintiff intervened to assist the servant who was in the cart, and, so far as the master was concerned, was a volunteer upon the occasion and was injured by what was found to be negligence in the defendant's servants in the warehouse. The question is, can the plaintiff, under the circumstances, sue the master for the negligence of his servants? This is the case of one who volunteers to associate himself with the defendant's servant in the performance

Opinion of the Court.

of his work, and that without the consent or even the knowledge of the master. Such an one cannot stand in a better position than those with whom he associates himself, in respect of their master's liability: he can impose no greater obligation upon the master than that to which he was subject in respect of a servant in his actual employ; and it is clear law that the master would not have been liable if the servant below had been injured by the negligence of the servants above. As between master and servant, the duty of the master is to take due care to employ other servants of competent skill and ordinary carefulness; when he has done that, he has done his duty as between himself and his servants, and we are of opinion that the liability contended for by the plaintiff does not attach to an employer."

It will be perceived that the court considered the plaintiff to be a volunteer, notwithstanding he intervened only at the request of the defendant's servant. Now, while it may seem a little strained to call such a person a mere volunteer, the reason given for the non-liability of the master is more substantial, to wit, that the plaintiff's act of associating himself with the defendant's servant, in the performance of the work, was done without the knowledge or consent of the master, and therefore he could acquire no better position than that of the servant with whom he associated himself.

The other case to which reference has been made is Flower v. Penna. R. Co., 69 Pa. 210. In that case, a locomotive being at a water station in the city of Lancaster, the fireman asked a boy ten years old standing there to turn on the water. Whilst he was climbing on the tender to put in the hose, the remainder of the train came down with the ordinary force and struck the car attached to the engine; the jar threw the boy under the wheels and he was killed. In an action by the parents for his death it was held that the company was not liable. AGNEW, J., in delivering the opinion, said: "The true point of this case is that in climbing the side of the tender or engine at the request of the fireman, to perform the fireman's duty, the son of the plaintiff did not come within the protection of the company. To recover, the company must have come under a duty to him which made his protection necessary. Viewing him as an employee at the request of the fireman, the relation

Opinion of the Court.

itself would destroy his right of action: Caldwell v. Brown, 53 Pa. 453; Weger v. Penna. R. Co., 55 Pa. 460; Cumberland V. R. Co. v. Myers, 55 Pa. 288. Had the fireman himself fallen in place of the boy, he could have had no remedy. It does not seem to be reasonable that his request to the boy to take his place, without any authority, general or special, can elevate the boy to a higher position than his own, and create a liability where none would attach had he performed the service himself."

The very important proposition, declared in this case, is that the servant of the company cannot impose a higher liability upon it than it was under to himself, by any act of his, and that the person rendering assistance in the service of the company, at the request of its servant, can have no other or different remedy against the company than the servant himself had. It seems to be a reasonable doctrine, founded in sound principles, and it has received full judicial sanction in the two cases cited.

Degg v. Railway Co., 1 H. & N. Exch. 773, was the case of one who was a pure volunteer, but the reasoning of the opinion is in conformity with the same doctrine. BRAMWELL, B., thus states the facts and decision : " The defendants were possessed of a railway and carriages and engines ; their servants were at work on the railway in their service with those carriages and engines; the deceased voluntarily assisted some of them in their work; others of the defendants' servants were negligent about their work, and by reason thereof the deceased was killed; the defendants' servants were competent to do the work; the defendants did not authorize the negligence. We are of opinion that, under these circumstances, the action is not maintainable. The cases show that if the deceased had been a servant of the defendants, and injured under such circumstances as occurred here, no action would be maintainable ; and it might be enough for us to say that those cases govern this, for it seems to be impossible to suppose that the deceased, by volunteering his services, can have any greater right or impose any greater duty on the defendants than would have existed had he been a hired servant."

It will be seen that the fundamental idea of the reasoning is that the volunteer can have no greater rights than those servants have who are engaged in the service in which he joins ;

and it is not so much because he is a volunteer as because he makes himself one of a class, who, as against their masters, have no right of recovery for each other's negligence. This appears plainly enough from another consideration. If a servant is paid for his service, of course he has only the rights of associated servants, and those do not include a right of recovery for the negligence of a fellow-servant. Why should he have a higher right where he is not paid? Baron BRAMWELL, meeting this idea in the case cited, says: " But we were pressed by an expression to be found in those cases to the effect that ' a servant undertakes, as between him and the master, to run all ordinary risks of the service, including the negligence of a fellow-servant:' Wiggett v. Fox, 11 Exch. 832, and it was said there was no such undertaking here. But in truth, there is as much in the one case as in the other; the consideration may not be as obvious, but it is as competent for a man to agree, and as reasonable to hold that he does agree, that if allowed to assist in the work, though not paid, he will take care of himself from the negligence of his fellow-workman, as if he were paid for his services."

It is manifest, therefore, and is perfectly well settled law, that one who is engaged in the service of a common master, and in a common employment, cannot recover against the master for the negligence of a fellow-servant, whether he is paid for his service or not. Now, the cases of Potter v. Faulkner and Flower v. Railroad, first above cited, are full authority for the further position, that if the stranger joins in the service at the request of one of the servants of the master, he is in no better position than a mere volunteer.

In the present case, the plaintiff's intervention in the service in which he was injured was induced by the order of his own superior, and the learned court below thought, and so held, that he could not be regarded as a volunteer, but rather as in the performance of a duty. At first blush this seems very forcible and quite reasonable, and it had much weight with the writer until a thorough study of the subject, and of the authorities, led him to a different view. As I regard the matter, the cases teach us that it is not because the associated servant is a volunteer that he is denied redress for the negligence of a fellow-servant, but because it is the well-established law of the

Opinion of the Court.

relation between the servants whom he joins, and their master, that there is no such liability on the part of the master. Hence, by joining them in their common service, he becomes, as to the master, one of them, with the same rights and duties as to the master, but with no higher rights as against him. Certainly, without his consent he cannot reasonably be subjected to a greater obligation, by the act of one of his servants in engaging the service of another, than he is under to that servant. If this be so, as was held in the cases cited, how does it matter in what manner the request of the defendant's servant was communicated to the plaintiff? Let it be that it came in the form of an order from his own superior, and that he was in duty bound to obey that order. It was still only done at the request of the defendant's servant, and the question we have to decide is the liability of the master. We have seen that his liability cannot be increased, without his consent, by the act of his servant, and it is that reason which is fundamental in the discussion which demonstrates his freedom from obligation for his servant's act. But if this is the determining reason of the argument, it is just as applicable where the servant's request is communicated through, or made the basis of an order by a third person to the plaintiff. It is very plain, for that is decided, that if Wiegner, who was Wischam's superior, had himself joined the service at the request of Harvey and been injured, he could not have recovered. How then can he confer upon Wischam, who is at best only his representative, a right of action against Rickards which he did not possess himself? We cannot see. It may be true that Wischam was subject to a duty to obey Wiegner, but that was no duty to the defendant; it was no duty to which the defendant had any relation whatever, and it is only the defendant's obligation that is in question here.

We cannot think, therefore, that the defendant's liability was in any manner increased by the fact that Harvey's request for assistance was answered by Wischam's joining in the service in consequence of an order from his superior. It was still only a participation by Wischam in an associated service, the law of which excludes him from compensation to be recovered from the master for the negligence of his associates.

There is, however, a feature of the subject which requires

consideration, and it is that which makes this case so exceedingly close. It is illustrated in the case of Abraham v. Reynolds, 5 H. & N. Exch. 142. There the plaintiff, a servant of I. & Co., who was employed by the defendants to carry cotton from a warehouse, was receiving the cotton into his lorry when, in consequence of the negligence of the defendants' porters, in lowering the bales from the upper floor of the warehouse, a bale fell upon him. Held, that the plaintiff and the defendants' servants, not being under the same control or forming part of the same establishment, were not so employed upon a common object as to deprive the plaintiff of a right of action against the defendants for such negligence. The facts found by the assessor were that the plaintiff went to the warehouse of the defendants to receive cotton bales into his wagon and carry them to his employers; that the cotton was in a room on the fifth floor, and was lowered by the defendants' servants into the lorry below. The plaintiff brought his lorry under the warehouse and received three or four bales, when one of the defendants' men called to him to pull in a bale; while he was doing so another bale fell upon him from above. It was argued that there should be no liability on the part of the defendants, the owners of the warehouse, because the plaintiff was engaged in a common service with the defendants' servants. But the court held otherwise, substantially on the ground that the plaintiff was merely acting for his own master, and was necessarily present for the purpose of receiving the cotton, and therefore had no relation with the defendants. POLLOCK, C. B., said: "When two persons serve the same master, one cannot sue the master for the negligence of his fellow-servant. The rule applies to every establishment. No member of an establishment can maintain an action against the master for an injury done to him by another member of that establishment, in respect of which, if he had been a stranger, he might have had a right of action. . . . . Here it is said that there was common work. If it was agreed that this work should be done by all, the rule might apply; but it does not apply merely because the parties had a common object, if they had separate ends, and for some purposes, antagonistic interests. There, as in a case, put by my brother MARTIN during the argument, of warping a vessel into a dock, mariners

at one end and dock laborers at the other, dragging at a rope, either party would be entitled to bring an action for an injury received in consequence of the negligence of the others.   It is carrying the matter too far to say that the mariner would have no right of action against the employer of the dock laborers if injured by the negligence of the latter.   They have different objects and different liabilities."   This reasoning clearly illustrates the grounds of the decision.   The plaintiff was merely receiving the cotton as the agent of his own master, and while doing so was injured by the negligence of the warehouseman's servants.   There was no community of service, as each was in the employ of a different master.

Another case of a similar kind is that of Wright v. Railroad Co., L. R. 1 Q. B. Div. 252.   There the plaintiff shipped a heifer in a box-car of the defendant's road, and took passage on the same train himself.   On arriving at the station, the car was shunted to a siding to get the heifer off.   There were only one or two porters available to shunt the box-car, and the plaintiff assisted in shunting the car to the side track to get the heifer off, and while doing so the box-car was run into by a train, which had been negligently allowed by the defendant's servants, and the box-car was driven against the plaintiff and seriously injured him.   It was held the defendant was liable for the injury, because the plaintiff was not acting merely as a volunteer, and he was not a fellow-servant, but only assisted in the delivery of his own goods, on his own behalf.   Lord COLERIDGE said: "It is plain that the plaintiff was not acting merely as a volunteer, in which case he would have been bound to take all the risks upon himself which he met with in the employment.   Nor was it the case of master and servant, in which case the defendants would not have been liable for the negligence of a fellow-servant.   But the defendants being bound by contract to deliver the heifer to the plaintiff, they by their representative, the station master, allowed the plaintiff to take part in the delivery, and they were therefore bound to see that he did not get injured by the negligence of their servants."   CLEASBY, B., said: "It is said that as the plaintiff was assisting the defendants' servants he became a fellow-servant. But this distinction makes no difference, for this reason: persons who engage in work with fellow-servants are said to take

Opinion of the Court.

the chances of the sort of negligence which they themselves or their fellow-servants may be guilty of. Is the plaintiff here in the position of a fellow-servant? The plaintiff was in that position in Degg v. Railway Co. and in Potter v. Faulkner. But he is not so here. He has not agreed to be the fellow-servant of the defendants' servants. But, according to a usual practice, he has assisted in the delivery of his own goods on his own behalf, not as a servant of the company."

These citations indicate the grounds upon which the decision was put, and they are in substance that the plaintiff had a right on his own behalf to be present and aid in the delivery of his own goods, without thereby assuming the relation of a servant to the defendant. In the present case that was not the fact. The plaintiff did become one of the servants of the defendant, to assist in the defendant's act of delivering the wheel. He was so acting in response to the request of one of the defendant's servants; he had no right or interest in the wheel or its delivery, and what he did was done on behalf of the defendant and in conjunction with the defendant's servants. The delivery was not completed, but was going on when the accident occurred, and the delivery was the act of the defendant. The participation of the plaintiff was not that of an owner receiving his own goods, but was that of a servant assisting the servants of the defendant, and this circumstance brings it within the rule of non-liability. The distinction is refined, but it seems to be substantial, and we feel constrained to recognize it and enforce it.

Judgment reversed.