## DETERMINED IN THE

# SUPREME COURT

## OF

# WASHINGTON

[No. 12522. Department Two. November 9, 1915.]

CHARLES T. GEER, *Respondent*, v. SOUND TRANSFER
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO THIRD PERSON—ASSISTING SERV-
ANT—LICENSEE WITH INTEREST—LIABILITY. Where a warehouse em-
ployee, injured while assisting a truck driver to unload a spool of
wire, for delivery to the warehouse, was facilitating or expediting his
master's work and serving his own or his master's interests, he was
not a pure volunteer assuming the risks of the service, but was a
licensee with an interest, and could therefore recover from the em-
ployer of the truck driver for the latter's negligence, on the principle
of *respondeat superior*.

SAME—INJURY TO THIRD PERSON—VOLUNTEER OR LICENSEE WITH
INTEREST—QUESTION FOR JURY. Whether a warehouse employee, in-
jured while assisting a truck driver to unload a spool of wire for de-
livery to the warehouse, was facilitating or expediting his master's
work and serving his own or his master's interest, so as to make him
a licensee with interest, instead of a pure volunteer, is a question
for the jury, where it appears that the spool weighed one thousand
pounds and the driver was unable to unload it alone and called for
assistance, that it was the duty of the plaintiff, as warehouseman,
to receive and store articles delivered to the warehouse, and he and
another went to the driver's assistance in turning and rolling the
spool from the truck to the platform, and was injured while on the
truck, through the negligence of the driver in starting to roll the
spool without warning.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered June 20, 1914, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for

[1]Reported in 152 Pac. 691.

personal injuries sustained by an employee in unloading a truck.    Affirmed.

*John A. Coleman* and *Hughes, McMicken, Dovell & Ramsey,* for appellant.

*Green & Chester,* for respondent.

ELLIS, J.—Action to recover damages which it is claimed were occasioned by one of the defendant's servants negligently rolling upon the plaintiff's foot a heavy spool of wire which the plaintiff was assisting the servant to unload from the defendant's truck.    The defendant, by answer, denied negligence, and affirmatively alleged assumption of risk and contributory negligence concurring with the negligence of fellow servants.    These defenses were traversed by the reply.

There is little dispute as to the material facts.    The plaintiff was in the employ of the Pacific States Electric Company as warehouseman, detailed for the purpose of looking after materials which came in and went out.    One Thomas, the driver of a truck of the defendant, Sound Transfer Company, had taken on at the Northern Pacific station, for delivery to plaintiff's employer, a spool or reel of wire of a diameter of about four feet and weighing in the neighborhood of one thousand pounds.    The driver of the truck drove up into the alley to the door of the warehouse, placing the side of the truck opposite the entrance.    The spool was at the time crosswise upon the back end of the truck and held in place by a plank lying on the bottom of the truck.    In order to unload the spool, it was necessary to swing it half around, roll it forward to the center of the wagon, and again turn it half around and roll it from the truck through the doorway into the elevator.    The case proceeded throughout the trial upon the assumption that it was the duty of the defendant, as a part of its undertaking to deliver, to unload the spool.    There is no charge that this was not a proper method of unloading or that there was any defect in the appliances.

The driver of the wagon, going to the door of the warehouse, called out to one Barnett, receiving clerk of the electric company, "Come out and give us a lift." He also called to the plaintiff, who was then packing glass, "Come on Jack, you can throw it off alone," or, "Come on here, we can throw it off alone." The plaintiff testified that, if the driver had not called to him and Barnett, he, at least, would not have gone to the driver's assistance, but would have expected him to unload it himself. The driver testified that he could not have unloaded the spool alone, that he could not say whether he called to the men to assist him or not, as he very seldom had to call for help there. They were always willing to help. At any rate, both Barnett and the plaintiff stepped upon the truck, laid their hands upon the spool with the intention of assisting in its movement, when, as related by both the plaintiff and Barnett, the driver applied his strength to the spool suddenly and without warning, rolling it so as to catch the foot of the plaintiff between the spool and the plank on the bottom of the truck alongside of it, crushing the foot. Both the plaintiff and Barnett testified that neither of them had applied any force to the spool. They both admitted that they had signed a statement to the effect that the three men took hold of the reel of wire and threw it around for the purpose of rolling it to the center of the truck. Such a statement was admitted in evidence, but they both denied they intended to say that either of them applied any force to the spool prior to its movement. At appropriate times the defendant moved for a nonsuit, for a directed verdict, and for judgment notwithstanding the verdict, all of which motions were overruled. The case was submitted to the jury under instructions to which no exceptions were taken. The jury returned a verdict for the plaintiff in the sum of one thousand dollars. From a judgment thereon, defendant appeals.

It is the appellant's position that the relation occupied by respondent towards the appellant must have been that of (1)

a trespasser, or (2) an emergency employee, or (3) a volunteer, and that if any one of these he cannot recover. Appellant then concedes that, under the evidence, respondent was neither a trespasser nor an emergency employee, but insists that he was a mere volunteer for the sole accommodation of the appellant's driver, and, as such, assumed all of the risks of the service upon which he entered, and is only entitled to the protection due to a trespasser; namely, protection against wanton or willful injury.

The respondent takes the position that he was not a trespasser, nor an emergency employee, nor a mere volunteer, but that in helping to unload the wire he was facilitating its reception by his own employer in whose interest he was acting, and was therefore on the truck as a licensee with an interest, and as such was entitled to the same protection from the negligence of the appellant's employee as if he had been at the time attending to his own purely private affairs. These contentions present the only question discussed in the briefs. It has never been distinctly passed upon by this court.

It is doubtless a general rule, sustained by preponderating authority, that one having no interest in the work to be performed, who voluntarily assists the servant of another, whether by such servant's request or otherwise, does not thereby become a servant of the latter's master so as to base a claim for negligence on the duty of a master to his servant, but is a mere volunteer, assuming the risks of the service, to whom the master owes no duty save to protect him from wanton or willful injury. This, of course, in the absence of authority, express or implied, in the servant to employ assistance. 6 Labatt, Master and Servant (2d ed.), § 2501; 2 Cooley, Torts (3d ed.), p. 1009; *Grissem v. Atlanta & B. A. L. R. Co.*, 152 Ala. 110, 44 South. 661, 126 Am. St. 20, 13 L. R. A. (N. S.) 561, and note.

As pointed out by Labatt, such a volunteer is placed in this dilemma:

"That, if the evidence shows that he was not authorized to perform, as a servant, the work in question, the party for whom the work was done owed him no obligations as a master; while, on the other hand, if his claim to be put on the footing of a servant is admitted, the doctrine of common employment operates as a bar to his recovery." 4 Labatt, Master and Servant (2d ed.), p. 4715, § 1563.

But there is a qualification to this rule equally as well settled as the rule itself. It is thus stated by Labatt:

"The rule discussed in the preceding section is subject to the important qualification that, where one who has an interest in the work to be performed, and for his own convenience, or to facilitate or expedite his own work or that of his employer, assists the servants of another, at their request or with their consent, he is not thereby deprived of his right to be protected against the carelessness of the other's servants." 4 Labatt, Master and Servant (2d ed.), p. 4718, § 1564.

See, also, Beach, Contributory Negligence (3d ed.), § 343; O'Donnell v. Maine Cent. R. Co., 86 Me. 552, 30 Atl. 116, 25 L. R. A. 658; Meyer v. Kenyon-Rosing Mach. Co., 95 Minn. 329, 104 N. W. 132; Eason v. S. & E. T. R. Co., 65 Tex. 577, 57 Am. Rep. 606.

Our outline of the positions taken by the respective parties makes it clear that, in this case, there is no controversy as to the existence either of the foregoing rule or of the qualification. The whole controversy is as to whether the plaintiff in this action falls within the disabilities of the rule or the privileges of the exception. The appellant, though citing many other decisions, mainly relies upon the decision of the supreme court of Pennsylvania in Wischam v. Rickards, 136 Pa. St. 109, 20 Atl. 532, 20 Am. St. 900, 10 L. R. A. 97, insisting that the case is an exact parallel on the facts with that here, and urging that the rule in that case should be adopted as the rule here. It is true the facts there were similar to those found here. There the defendant was delivering a large fly wheel at the factory of the plaintiff's employer. The serv-

ants of both defendant and plaintiff's employer were engaged in unloading the wheel from a wagon. Defendant's foreman called for help, and plaintiff's foreman ordered plaintiff to assist. The wheel was raised from the wagon by means of a rope and chain hanging over a scaffold about two feet high leading into the doorway of the building into which it was being delivered. Some difficulty was experienced with the rope and chain, and the wheel was lowered onto the scaffold so that it leaned against the wall of the building. The defendant's foreman climbed upon the wheel, loosened the chain, and in stepping down, his weight caused the wheel to fall and injure the plaintiff. The court held, as a matter of law, that the plaintiff was a mere volunteer, and set aside the verdict of the plaintiff, citing and laying special emphasis on two cases as tending to support that course. In one, the question here involved, though possibly present, was not discussed. In the other, it was not possibly present on the facts. The first is an English case, *Potter v. Faulkner*, 1 B. & S. 800, decided in 1861. The defendant's porters were lowering bales of cotton from the defendant's warehouse, and his carter was receiving them in his lorry or cart. The plaintiff, who was waiting with his lorry to receive a load of cotton for his own master, at the request of the defendant's carter, assisted him, and, in consequence of the negligence of the defendant's porters above, a bale of cotton fell upon him and injured him. The arguments of counsel, as digested in the English report, do not present the qualification to the rule of nonliability here involved, and the decision does not discuss it. It merely says that the plaintiff intervened to assist the servant who was in the cart and, so far as the master was concerned, was a volunteer, and was injured by what was found to be the negligence of the defendant's servants in the warehouse. The court held that the plaintiff could not recover, basing its decision on the case of *Degg v. Midland R. Co.*, 1 H. & N. 773, a case in which on the facts the question here involved could not have arisen.

The other case especially emphasized in the *Wischam* case is *Flower v. Pennsylvania R. Co.*, 69 Pa. St. 210, 8 Am. Rep. 251. In that case, a locomotive being at a water station, the fireman asked a boy of ten years standing by to turn on the water. While he was climbing on the tender to put in the hose, the remainder of the train was allowed to run against the car attached to the engine. The jar threw the boy under the wheels and he was killed. In an action by the parents for the child's death, it was held that the company was not liable. A mere recital of the facts shows that the question here involved, and which was also involved in the *Wischam* case, was not in any sense present in the *Flower* case.

The court in the *Wischam* case also cites, and seeks to distinguish in particular, two cases in which liability was sustained. In the first of these, an English case, *Abraham v. Reynolds*, 5 H. & N. 142, plaintiff, the servant of J. & Co., who were employed by the defendants to carry cotton from a warehouse, was receiving the cotton into his lorry when, in consequence of the negligence of defendant's porters in lowering the bales from the upper floor of the warehouse, a bale fell upon him. It was held that the plaintiff and defendant's servants, not being under the same control, were not so employed upon a common object as to defeat plaintiff's action against defendant for such negligence. Obviously, the facts in the case were such that neither the rule nor the exception, one of which it is conceded by both parties here is controlling upon the facts here, could possibly have been involved. The servants of the two masters were neither of them participating in the other's work. There was, therefore, no question of a volunteer. The decision has no bearing upon the question involved here or in the *Wischam* case, one way or the other.

In the other, also an English case, *Wright v. London & Northwestern R. Co.*, 10 Q. B. 298, the facts were these: The plaintiff shipped a heifer in a box car of the defendant and took passage on the same train himself. On arriving at its

destination, the car was shunted to a siding to get the heifer off. The plaintiff assisted in shunting the car, and while doing so, the box car was run into by a train negligently operated by the defendant's servants. The box car was driven against the plaintiff, seriously injuring him. It was held that the defendant was liable for the injury because the plaintiff was not acting merely as a volunteer and he was not a fellow servant, but only assisted the defendant's servants in delivery of his own goods on his own behalf, thus clearly recognizing the exception to the rule as to volunteers as above quoted from Labatt. The Pennsylvania court seeks to distinguish this case from the *Wischam* case, on the sole ground that the person injured was acting in his own interest, overlooking the other branch of the exception to the rule as to volunteers, namely, that the servant assisting the servants of another in the interest of his own master is also exempt from the disabilities of a mere volunteer.

It seems clear to us that the *Wright* case cannot be soundly distinguished, either from the case before us or from the *Wischam* case, when the qualification to the rule as to volunteers is fully applied. It seems to us that a bare recital of the facts as found in the opinion in the *Wischam* case demonstrates that the court, in order to deny liability on the ground that plaintiff was a mere volunteer, was forced to find, as a *matter of fact*, that the plaintiff had no interest in the work which he undertook to assist the defendant's servants in performing, and this upon evidence not only capable of the inference, but hardly capable of any other, that he was assisting in order to facilitate the reception of the wheel by his own master, and was thus assisting solely to advance his own master's interest. He was in no sense a mere bystander or a stranger, yet much of the court's argument seems to assume that he was. He was assisting in the delivery of his own master's goods and in his own master's behalf, just as clearly as was the plaintiff acting in his own behalf in the *Wright* case, which the court seeks to differentiate. The

court based its decision on the bare circumstance that "the delivery from the wagon to the platform was not quite completed when the accident happened," but that, also, was the case in each of the English decisions from which the court was seeking to distinguish the *Wischam* case. To make that fact a controlling distinction is to overlook the only basis for invoking either the rule or the acknowledged exception, namely, that the injured man was participating *in the work of another*, if to advance the other's interests, then he was a volunteer, but if to advance the interests of himself or his own master, then he was not a volunteer.

It is only where the work in hand is that of another than the injured person or his master, that either the rule or the exception can be involved at all. Therefore, by basing its conclusion that the injured man was a mere volunteer, on the fact that the delivery was not complete and was the work of defendant, the court ignores the very existence of the exception. If the line is properly drawn—as it is admitted by counsel for both sides that it is—between a pure volunteer without any interest either personal to himself or to his own master, and a licensee having an interest either on his own or his master's account, then it is obvious that the question is always one of *interest as a fact*. Where, therefore, there is any evidence, or justifiable inference from evidence, upon which ordinary minds might reasonably differ as to the fact of interest, the question is one for the jury to determine under proper instructions. This is but an application of a familiar principle always invoked by this court whenever the sufficiency of evidence to sustain a verdict is challenged. *Young v. Aloha Lumber Co.,* 63 Wash. 600, 116 Pac. 4; *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166.

The line between liability and nonliability—licensee and volunteer—must of necessity be drawn sharply between any interest in the work in hand and no such interest, else the rule would be without substance or certainty. The moment the court can say that the relation of the injured person, or

that of his own master, to the work was such that he might reasonably be expected to have some interest in the time or manner of its performance, that is to say, an *interest* as distinguished from the mere *curiosity* or *officiousness* which characterizes the simple intermeddler, that moment the question becomes one for the jury. Where there is any evidence tending to establish such a relation to the work as *might* excite such an interest, the court cannot go further and attempt to say whether it did so or not. That would be to weigh the evidence, which is always the province of the jury. The possible *quality* of the interest which the evidence tends to establish under the rule is for the court to define. The probable *quantity* of the interest, as sufficient or insufficient to justify the injured person in participating in the work, is for the jury to determine by weighing the evidence. The qualitative tendency of the evidence is for the court, its quantitative sufficiency is for the jury.

Because of the similarity of its facts to those here and the deserved high standing of the court from which the *Wischam* decision emanates, we have felt impelled to state at length our reasons for declining to follow it. It is the only case to which our attention has been called, or which we have been able to find, in which it has been held that the consignee or the servant of the consignee of goods or materials who assists the servants of a carrier in unloading or delivery has been held to be a mere volunteer with no greater rights than those of a trespasser. On the other hand, there are many cases, both English and American, which hold the contrary. The English cases of *Holmes v. Northeastern R. Co.*, 4 Exch. 254, and *Wright v. London & N. W. R. Co.*, *supra*, were cases in which the consignee, participating personally in the work of delivery, was held not a mere volunteer, but as having such an interest in the work as to be entitled to recover for injuries resulting from the negligence of the defendant or its employees. The same doctrine is now generally sustained in the United States.

In *O'Donnell v. Maine Cent. R. Co., supra,* the facts as stated in the opinion were briefly as follows:

"It appears that the Maine Central Railroad Company, while engaged in transporting earth for its own use, undertook to deliver some earth for the use of Mr. H. N. Jose; and the evidence tends to show that the crew in charge of the gravel train requested the men employed by Mr. Jose to assist in dumping the earth out of the cars, and that while so engaged a broken car, unevenly loaded, tipped over and fell upon one of Mr. Jose's men (Thomas Welch) and inflicted injuries of which he afterwards died."

The court sustaining a recovery on the part of decedent's administrator, said:

"The distinction running through all the cases is this, that where a mere volunteer, that is, one who has no interest in the work, undertakes to assist the servants of another, he does so at his own risk. In such a case the maxim of *respondeat superior* does not apply. But where one has an interest in the work, either as consignee or the servant of a consignee or in any other capacity, and, at the request or with the consent of another's servants, undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible. In such a case the maxim of *respondeat superior* does apply. The hinge on which the cases turn is the presence or absence of self-interest. In the one case, the person injured is a mere intruder or officious intermeddler. In the other, he is a person in the regular pursuit of his own business, and entitled to the same protection as any one whose business relations with the master exposes him to injury from the carelessness of the master's servants."

On no sound principle can that case be distinguished, either on the facts or on the law, from the one here under consideration. It is true that the *O'Donnell* decision undertakes to distinguish that case from the *Wischam* case, not by discussing the facts in evidence in the *Wischam* case, but by taking the conclusion of the Pennsylvania court on the facts as the basis of the distinction, stating that "the court found as a matter of fact that the plaintiff was a mere volunteer

having no interest in the work which he undertook to assist the defendant's servants in performing, etc." In view of the fact that all questions of fact, where there is any evidence from which two inferences can be drawn, are in this state questions for the jury, such a distinction is without force here.

In *Meyer v. Kenyon-Rosing Mach. Co.*, *supra*, the plaintiff, who was interested with two others in the purchase of a threshing machine, was injured through the negligence of a servant of the machine company whom the plaintiff was voluntarily assisting in setting up the machine preparatory to delivery. The court, following the rule announced in the *O'Donnell* case, reversed the directed judgment for the defendant and ordered a new trial.

In *Eason v. S. & E. T. R. Co.*, *supra*, the trial court sustained a demurrer to the plaintiff's complaint. On appeal the supreme court stated the facts as follows:

"Does the appellant's petition bring his case within this principle? He was not an employee of the railway company, but of the owners of the mill who shipped lumber by the company's cars. His business was to load lumber upon the cars for his employers. The car which he attempted to couple to the train was placed in the situation it occupied for the purpose of being loaded with lumber by the servants of Carlisle & Snelling, who owned the mill. It was so located that it could not be conveniently loaded, and to have it hauled upon the track was a matter of interest to the plaintiff's employers.

"The fact was called to the attention of the conductor by the appellant himself, acting in behalf of his employers, Carlisle & Snelling. The conductor consented to his request, but, being short of brakemen, asked the appellant to couple the car to the one immediately in front of it, which the latter consented to do; and, in its performance, received the injury complained of, through the negligence of the engineer."

The lower court was reversed and the cause remanded for trial.

See, also, *Railroad v. Ward*, 98 Tenn. 123, 38 S. W. 727, 60 Am. St. 848; *McIntire R. Co. v. Bolton*, 43 Ohio St. 224, 1 N. E. 333, 54 Am. Rep. 803; *Kelly v. Tyra*, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L. R. A. (N. S.) 334; *Johnson v. Clark Motor Co.*, 173 Mich. 277, 139 N. W. 30, 44 L. R. A. (N. S.) 830.

Of the cases cited by the appellant, in only one, save the *Wischam* case, could the question here involved have arisen. That is the case of *Longa v. Stanley Hod Elevator Co.*, 69 N. J. L. 31, 54 Atl. 252. Though the question here involved might have been raised on the facts, it was not discussed in the opinion, nor is there anything in the opinion to show that it was ever presented.

In the following cases neither the injured person nor his employer had any interest, however remote, in the work which the injured person volunteered to perform. *Baynes v. Billings*, 30 R. I. 53, 73 Atl. 625; *Flower v. Pennsylvania R. Co.*, *supra;* *Mayton v. T. & P. R. Co.*, 63 Tex. 77, 51 Am. Rep. 637; *Cincinnati, N. O. & T. P. R. Co. v. Finnell*, 108 Ky. 135, 55 S. W. 902, 57 L. R. A. 266; *Marshall & E. T. R. Co. v. Sirman* (Tex. Civ. App.), 153 S. W. 401.

In *Walker v. El Paso Elec. R. Co.*, 103 Tex. 259, 126 S. W. 262, the injured servant of an engineering company was, by contract, on request to become the servant of an electric company, and was injured while assisting the servants of the latter company. His relation was that of any other contractual servant.

The following cases hinge upon the fact that the injured servant voluntarily stepped out of his proper line of employment to assist another servant of the same master in a different branch of the work. They are in no sense applicable to the case here presented. *Osborne v. Knox & Lincoln R.*, 68 Me. 49, 28 Am. Rep. 16; *Patterson v. North Carolina Lum. Co.*, 145 N. C. 42, 58 S. E. 437; *Lindquist v. King's Crown Plaster Co.*, 139 Iowa 107, 117 N. W. 46; *Texas & N. O. R. Co. v. Skinner*, 4 Tex. Civ. App. 661, 23 S. W.

1001; *Evarts v. St. Paul, M. & M. R. Co.*, 56 Minn. 141, 57 N. W. 459, 45 Am. St. 460, 22 L. R. A. 663.

In the following cases the injured person was an "emergency servant" employed by the defendant's servant. In each case he was held a fellow servant of the servant employing him, for whose negligence on that account he could not recover. The distinction from the case here is too obvious to require discussion. *Gunderson v. Eastern Brewing Co.*, 71 Misc. Rep. 519, 130 N. Y. Supp. 785; *Cannon v. Fargo*, 138 App. Div. 20, 122 N. Y. Supp. 576; *Jackson v. Southern R.*, 73 S. C. 557, 54 S. E. 231.

We are constrained to hold that, under the evidence here presented, the question whether the respondent was expediting or furthering the business of his own master, so as to take him out of the category of mere volunteers, was one for the jury. The inference is clear that it was his and Barnett's duty to their own master to receive and store the wire. It cannot be said, as a matter of law, that, in assisting to unload it, they were not facilitating or expediting their work and primarily serving their own convenience.

The question of contributory negligence, though raised in the appellant's answer and in the motion for a nonsuit, is not discussed in the briefs. In any event, a careful consideration of the evidence convinces us that the question was one for the jury. We find no error in the record warranting a reversal.

The judgment is affirmed.

Morris, C. J., Fullerton, and Chadwick, JJ., concur.