## CHARLES F. BURT *vs.* CITY OF BOSTON.

Suffolk. Nov. 16, 17, 1876. — March 7, 1877. AMES & LORD, JJ., absent.

The liability of cities and towns, under the Gen. Sts. c. 44, §§ 1, 22, for defects in highways, is not limited to such defects as are open and visible.

In an action against a city for an injury caused by an alleged defect in a highway, there was evidence that the injury was caused by the breaking of a flagstone, which formed part of a sidewalk, and covered a coal cellar connected with a house; and there was evidence tending to show the size of the flagstone and the manner in which it was supported by walls underneath; that it had been in use for at least six years; that the upper part was somewhat hollowed out in places; that for six months or more there had been three or more cracks in it, visible on the upper surface and extending from the centre to the outer edges; that it broke by the plaintiff's weight upon it along the cracks and in other places; that the edges of the pieces, where the cracks had been, were black and dirty and looked as if the cracks were old; that the stone on the under side was rotten and easily flaked off with a trowel; and that in many places the mortar had fallen out from the walls supporting the stone and the walls had become loose and insecure. *Held,* that the question whether the sidewalk was defective was for the jury.

The sub-lessee of a part of a house only, in the rest of which he has no right or control, may recover against a city for injuries sustained through a defect in the sidewalk in front of the house.

TORT for personal injuries sustained through an alleged defect in Boylston Street, in the city of Boston.

At the trial in this court, before *Lord,* J., it was in evidence for the plaintiff, that in July, 1873, he hired lodgings at No. 35 Boylston Street, consisting of two rooms, up one flight, of a Mrs. Knight, at the price of $8.50 a week, which included care of the rooms and fire; that he occupied the rooms from that time till February 22, 1874, the day of the accident, in part as lodgings and in part for the preparation and sale of a medicine; that the lower story of the house was occupied as a shop by an apothecary; that Mrs. Knight hired the remaining three stories of one Rice, occupying a part herself, and letting out the rest to lodgers by the week; that Mrs. Knight had hired and occupied the same for about two years; that she had no lease; that Rice was to make all repairs, and had, within a year before the accident, repaired the chimneys and roof and other parts of the house; that the part hired by Mrs. Knight included a portion of the cellar and an excavation or vault extending from the cellar, under the sidewalk, and designed for getting in or storing coal; that

she had used the vault for this purpose the first year she occupied the house, but since the plaintiff had come to the house, and for some months before, her coal and other fuel had been brought into the house by a back entrance, without being put into the cellar, and during this time the vault had not been opened or used at all; that a portion of the cellar belonged to the tenant of the apothecary's shop ; that the plaintiff had never been in the cellar, and had no right or occasion to go there, and had no knowledge of the existence of the vault, except what he might infer from seeing the iron cover of a hole into the vault in the sidewalk ; that he had nothing to do with the cellar or vault or the coal, his coal being brought to his room, and his fire made and attended to by Mrs. Knight; that the vault was some seven or eight feet deep and some five or six feet square, and extended from the cellar, under the steps leading from the house to the sidewalk, and under the sidewalk to within about eighteen inches of the curbstone ; that three sides of the vault were built up with brick walls about four inches thick, to within two or three inches of the level of the sidewalk, the side toward the house being open ; that upon these walls rested a single flagstone of slate color and formation, of the size of and covering the vault, and forming the sidewalk over it; that the stone had a bearing of about two inches in width upon the three walls, but was not supported on the side next the house ; that in the middle of the stone was a coal-hole, with an iron cover, opening into the vault; that the stone had been there at least six years ; that the upper surface was substantially level, but had become somewhat hollowed out in places, and that, for six months or more before the accident, there had been three or more cracks in the stone, visible on the upper surface, and extending from the coal-hole in the middle to the edges of the stone, one toward the steps and two towards the curbstone.; that the cracks were filled with dirt, and were about one eighth of an inch in width, a mason testifying that in some places along the cracks one edge of the stone was about a quarter of an inch lower than the other, but, on cross-examination, that one would have to use a rule to find it out ; that there was and had been no support for the stone except as above stated; that the stone was the whole width of the steps to the house, and there was no way for persons going into or coming out

of the house except over this stone; that the plaintiff took his meals out of the house; that on Sunday evening, February 22, 1874, between eight and nine o'clock, he left his rooms to go out for his supper; that it was raining a little, and he stopped on the outer steps to spread his umbrella, and then stepped down upon this stone in the sidewalk; that he had taken but one or two steps upon it, when the stone broke and he fell through to the bottom of the vault, and was hurt by the fall and by the pieces of the stone falling upon him; that the stone broke along the cracks and in other places; that the pieces were of irregular shape, some being as large as eighteen inches square, and many smaller; that the edges of the pieces, where the cracks had been, were black and dirty, and looked as if the cracks were old; that the pieces varied in thickness from two to three inches; that the stone on the under side was rotten, and was easily flaked off with a trowel; that in many places the mortar had fallen out from the walls supporting the stone, and the walls had become loose and insecure, and the bricks in the walls, to a depth of about two feet from the sidewalk, fell into the vault with the pieces of the stone.

The plaintiff testified that he had been over the stone five or six times every day for some eight months before the accident, and remembered, after the accident, having noticed the cracks; but said on cross-examination that he had never thought of danger or thought of the matter at all. And all the witnesses for the plaintiff, who had seen the cracks, testified, on cross-examination, that they had seen nothing to indicate danger, nor thought there was any danger in going over the stone, but had travelled over it without thought, as they had over other stones in the sidewalk.

At the close of the plaintiff's evidence, the case was taken from the jury, and reported for the consideration of the full court. If, upon this evidence, a jury would be warranted in finding a verdict for the plaintiff, the case was to stand for trial; otherwise, judgment was to be entered for the defendant.

*W. S. Stearns,* (*G. E. Smith* with him,) for the plaintiff.

*J. P. Healy & H. W. Putnam,* for the defendant.

MORTON, J. The statute provides that highways shall be kept in repair at the expense of the town or city in which they

are situated, so that they shall be safe and convenient for travellers, and that any person, who receives injury through a defect or want of repair in a highway, may recover damages therefor of the town or city by law obliged to repair the same, if such town or city had reasonable notice of the defect, or the defect had existed for twenty-four hours previously to the occurrence of the injury.   Gen. Sts. c. 44, §§ 1, 22.   There is no provision of the statute, which limits the liability of towns and cities to open and visible defects, as contended by the defendant, but it extends to all defects.

Ordinarily, the question whether a defect exists at the time of the injury and whether it has existed for twenty-four hours previously, are questions of fact exclusively for the jury.   In the case at bar, both these questions were for the jury to decide.

The plaintiff was injured by the breaking of a flagstone which formed part of the sidewalk in front of the house in which he lived, and which covered the coal cellar or vault connected with the house.   There was evidence tending to show the size of the flagstone and the manner in which it was supported by walls underneath; that it had been in use for at least six years; that the upper part was somewhat hollowed out in places; that for six months or more there had been three or more cracks in it, visible on the upper surface and extending from the hole in the centre to the outer edges; that it broke by the plaintiff's weight upon it along the cracks and in other places; that the edges of the pieces, where the cracks had been, were black and dirty and looked as if the cracks were old; that the stone on the under side was rotten and easily flaked off with a trowel; and that in many places the mortar had fallen out from the walls supporting the stone, and the walls had become loose and insecure.   It is impossible to decide upon this evidence, as matter of law, whether the sidewalk had or had not been in a dangerous condition for twenty-four hours previously to the accident.   The jury alone are entitled to decide whether the fair inference from all the evidence is that the sidewalk was at the time of the accident, and had been for twenty-four hours, in a dangerous condition.   We are of opinion that this question should have been submitted to them.

The defendant contends that the plaintiff cannot recover, because he was lessee of a part of the house to which the coal cel-

lar belonged. The owner or lessee of a house, whose duty it is to keep the sidewalk in repair, is liable over to the city if it is compelled to pay damages for an injury caused by a defect in such sidewalk. *Boston* v. *Worthington*, 10 Gray, 496. And it is clear that such owner or lessee could not maintain an action against the city for an injury to him caused by a defect in such sidewalk. But the plaintiff was not such owner or lessee. He was lessee of two rooms in the house and had no right in or control over the coal cellar. He was under no duty or obligation to keep the sidewalk in repair, and was not liable to any one for an injury caused by a defect in it. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Shipley* v. *Fifty Associates*, 106 Mass. 194. *Leonard* v. *Storer*, 115 Mass. 86. *Larue* v. *Farren Hotel Co.* 116 Mass. 67. The principle running through all the cases is, that the party whose negligence causes the injury, whether he be lessor or lessee, is liable for the injury. If it be assumed that Mrs. Knight, the plaintiff's lessor, was responsible for the condition of the sidewalk, yet his relation to her was not such that her negligence could be imputed to him or defeat his right to recover of the city.

The case of *Bartlett* v. *Boston Gas Light Co.* 117 Mass. 533, relied upon by the defendant, is entirely different from the case at bar. There it was held that the lessor was affected by the negligence of his lessee, and could not recover if such negligence caused an explosion of gas which had accumulated in the house by the negligence of the defendant. But it was upon the ground that the lessee was intrusted by the owner with the charge and control of the property, and was therefore the one whom the owner had put in his place, with the duty of using reasonable care for the protection of the property. In the case at bar, the plaintiff never had any duty as to the sidewalk, and of course never transferred any such duty to his lessor. He is in no way responsible for her negligence in regard to other parts of the house not leased by him, and his right to recover of the city is not affected by such negligence.

We do not understand that there is any question made upon the point that it was for the jury to determine whether the plaintiff was in other respects in the exercise of due care.