MARIE GARANT, administratrix, *vs.* MICHAEL CASHMAN & another.

Essex.    January 13, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability, ways, works or machinery, plaintiff's due care, assumption of risk.

In an action against a stevedore maintaining a run or staging for unloading coal, for the death of the plaintiff's intestate, alleged to have been caused by a defective barrier on a platform of the run where the intestate was at work in the employ of the defendant, it appeared, that when the defendant assumed control of the run the platform was guarded by a barrier, consisting of iron posts set into the floor of the platform each secured by a nut, with a rope running through an eye in each post, that afterwards wooden posts were substituted for the iron ones, and were not mortised into the platform or secured by clamps or bolts but merely nailed to the platform, that a few hours before the accident one of these posts, which a month before had been drawn out a little and nailed back again, was struck by a wheelbarrow and knocked off, and was set back and nailed in place by a fellow workman of the intestate, that the intestate while engaged in tipping a bucket of coal into a wheelbarrow, lost his balance and fell against the rope, whereupon the post gave way and the intestate was thrown to the deck of the vessel below, and received the injuries which caused his death. The post was found with the nails drawn out hanging from the platform by the rope. There was no evidence, that the intestate knew of the repairs that had been made on the post or knew that it had been renailed that morning, or that there was anything in the appearance of the post that upon ordinary observation would indicate that it was insecurely fastened. *Held,* that there was evidence warranting a finding, that the negligence of the defendant in maintaining his ways, works or machinery was the proximate cause of

the death of the intestate. *Held, also,* that the intestate being engaged upon his work in the usual way at a place where he had a right to be, and no negligent act being shown, due care on his part could be inferred. *Held, also,* that the defective condition of the post was not an obvious risk and therefore not one assumed by the intestate.

TORT under the employers' liability act, with counts at common law, for the death and conscious suffering of the plaintiff's intestate. Writ dated April 17, 1901.

In the Superior Court the case was tried before *Aiken,* J. The defendants were stevedores who, under an arrangement with a corporation called the Atkinson Coal Company, took charge of the discharging of coal at the wharf of that company at Newburyport, and agreed to keep in repair the coal run, from an alleged defect in which the accident occurred. The material portions of the evidence are stated by the court. The judge refused to make the rulings requested by the defendants, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $4,500, apportioned $500 for conscious suffering and $4,000 for the death. The defendants alleged exceptions, raising various questions, of which those that were argued are stated by the court.

*H. P. Moulton, G. C. Dickson & C. S. Knowles,* for the defendants.

*R. E. Burke & J. P. Sweeney,* for the plaintiff.

BRALEY, J. The plaintiff's intestate while in the employ of the defendants, and at work for them on a coal run or staging handling coal, received injuries from which after a period of conscious suffering he died. The declaration contained four counts, two under St. 1887, c. 270, as amended by Sts. 1892, c. 260, 1893, c. 359, 1894, c. 499, now R. L. c. 106, §§ 71-74, and two at common law.

On motion of the defendants specifications were ordered by the judge, and filed by the plaintiff, and the case appears to have been tried and submitted to the jury on the first count and the specifications relating thereto, which alleged in substance the negligence of the defendants to be an insufficient or defective guard or barrier upon the apron or platform of the run or staging where the plaintiff's intestate was at work at the time of the accident, and which was a part of the ways, works and machinery connected with and used by them in their business.

Exceptions were taken and saved by the defendants to the admission of certain evidence as well as to the refusal of the judge to give various rulings requested by them, but only two questions have been argued on their brief, which we consider in the order presented, and treat the other matters as waived.

1. In order for the plaintiff to recover, the burden was on her to show that the defendants' negligence was the proximate cause of the injury to and death of her intestate.

The ways, works and machinery in the use and control of the defendants at the time consisted of a coal run or staging then being used by them for unloading coal from a vessel. A part of the run was an apron or platform attached to it by hinges where it joined the shears or uprights and which held and supported the apron at one end, and a chain ran from each outer side of the corner of the apron back to and connected with the uprights. This apron, when not in use, was folded up against the shears or uprights, and when in use was let down and lowered to a level with the run, and held in place over the vessel that was being unloaded by the hinges at its base and the chains. On each side of the apron, and a part of it, was a small bench. At the outer side of each bench nearest the chain was a wooden post nailed to the floor of the apron, and also to the side of the bench. A rope about ten feet in length ran from each post to the chain on that side of the apron. These posts were about four feet high and extended some three feet above the top of the benches, and the rope was about even with the hips of the man who stood on the bench when at work. In unloading coal from a vessel the coal was hoisted by buckets, and raised so far above the level of the apron or platform as would allow the bucket to clear the wheelbarrow that was to receive the coal. The " tippers " and " wheelers," or men who unloaded the coal, stood on these benches, the " tipper " on the bench to the left and the " wheeler " on the bench to the right of the apron, and tipped the contents of the bucket into the barrow. The undisputed evidence shows that this arrangement of posts and ropes was a part of the original construction of the apron, and was designed for and used as a barrier or guard to secure the safety of the men when at work on the apron, and using the benches, from falling off the platform. There was evidence that at the

time when the defendants assumed the control and maintenance of the run or staging these posts were of iron set into the floor of the apron and secured by a nut which held the post in place, and that a rope about an inch in diameter ran from an eye in each post to the chain on that side of the apron; that at some time afterwards wooden posts were substituted by the defendants for the iron posts, and that these posts were not mortised into the platform or secured by clamps or bolts, but were only attached thereto by being nailed to the floor of the apron and to the top of the bench. This run had been in the control of the defendants, or their firm, for about "twelve or fifteen years," and used by them for the purpose of unloading coal "twenty or thirty times in each year." About a month before the accident the post that then gave way was drawn out a little at one corner, about half an inch from the plank or floor of the apron, and on the day of the accident, a few hours before it happened, had been struck by a wheelbarrow and knocked off, and upon each occasion had been set back in place and the nails redriven as before by an employee of the defendants. The plaintiff's intestate fell against the rope leading from this post to the chain, and from there to the deck of the vessel below, some twenty-two feet. Immediately after, this post was found with the nails drawn out hanging to the platform by the rope.

Upon this evidence taking into consideration the length of time the defendants had been in control of, and used the run or staging, the nature and character of the work required by the men on the apron while engaged in handling coal, the object and purpose of the guard or barrier, the changing from iron posts to wooden posts, the manner in which the latter were fastened, and the condition of the post that gave way, it was for the jury to say whether the defendants in the discharge of their duty to. their employees exercised that care, diligence and supervision over the apron or platform, with its benches, posts and ropes, so that the same was reasonably safe for the plaintiff's intestate to use in his work, and whether the post that gave way was suitably and securely fastened so as to be sufficient for the use for which it was designed, and to stand the strain to which at any time it might be subjected by the men using it as a barrier and taking hold of it to steady themselves when at work and in order to prevent

their falling off the apron, and they might well find that the post, either by original construction and adaptation to the apron, or by long continued use, was or had become defective and unsafe, and that reasonable care on the part of the defendants in seeing that the run was kept in proper condition for the use of their servants should have led them to have ascertained and remedied the defect. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198, 205. *Roughan* v. *Boston & Lockport Block Co.* 161 Mass. 24, 25.

But the defendants contend that the replacing of the post on the morning of the accident by one of their employees was a voluntary service on his part, and not within the scope of his employment, and that if his conduct was negligent and contributed to or caused the accident then the plaintiff cannot recover.

If this question is now open to them, the jury were fully instructed that in so far as the conduct of their employee Martin in resetting and nailing the post on the morning of the day of the accident might have been the sole cause of the injury and death of the plaintiff's intestate, " if the defect, if the sole defect which caused the injury came into existence the morning of the injury and a few hours before, and consisted of replacing the post by Martin insecurely, that is not a defect for which the Cashmans are liable. If the only fault that you find in this case, that was the cause of the injury, consists of the condition of the post when it was replaced by Martin and that was the cause of the injury, the sole cause of the injury, there is not any liability in this case against the Cashman Brothers. It would be a defect or a cause of injury for which the Cashman Brothers were not responsible under any aspect that this suit presents. . . . Or, to put it more briefly than I have done, if what Martin did was the sole cause of the injury, was the sole cause of Garant's fall and injury, there is no liability on the part of the Cashmans. . . . There must be more, there must have been other contributing cause, something besides what Martin did, a defect in the construction or in the maintenance of that post, in order to make the Cashmans responsible." These instructions were sufficiently favorable to the defendants, and stated the law according to their contention. The further instruction given that, " If the jury are satisfied that the falling of the plaintiff's intestate, that is,

Garant, was due in part to the negligence of the defendants, the fact that the negligence of Martin contributed to it may be disregarded," was sufficiently accurate. *Derry* v. *Flitner*, 118 Mass. 131, 134, and cases cited. *Lynn Gas & Electric Co.* v. *Meriden Ins. Co.* 158 Mass. 570, 575. And by their verdict, under these instructions, the jury must have found that the act of Martin in replacing the post was not the sole cause of the accident, but that the defendants were negligent either in its construction or maintenance.

2. There remains to be considered the question of the due care of the plaintiff's intestate. At the time when he received his injury he was in the discharge of his duty which he was hired to perform by the defendants, and at work in the usual way in the place provided for and with the instrumentalities furnished him by them. Alexander Martin, a witness called by the plaintiff, testified in substance that he saw the deceased, who was a " wheeler," come on to the run, pass on to the apron or platform with his wheelbarrow, set it down, put one hand on the barrow, the other on the top of the post, and then climb on to the bench, and that he took hold of the tub as it arose from the vessel, swung and pulled it in and tried to tip it ; and when partly tipped " saw his arms on the chain, and he went down on deck." Another witness said, " All I could see was that part of him when he was leaning back over the rope." Other witnesses described more or less fully where he was at the time, from which it might fairly be found by the jury that while engaged in tipping the bucket full of coal into the wheelbarrow, placed on the apron, and while standing on the bench for that purpose, he lost his balance, fell against the guard or barrier on that side, which was insufficient to stand such a strain ; that the post gave way, and he fell from the platform to the deck of the vessel below. It does not appear that he was guilty of any negligent act, and from this alone due care may be inferred. Being engaged upon his work in the usual way, and where he had a right to be, nothing further appearing, the jury would be justified in assuming that he was in the exercise of due care. *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379. *Caron* v. *Boston & Albany Railroad*, 164 Mass. 523, 525, 526.

The defendants asked the judge to rule that " no liability

arises from any fault of construction, such as an insufficient height of the stake, etc., as the condition was obvious, and the risk assumed by the plaintiff's intestate," and that " upon all the evidence the plaintiff is not entitled to recover against them." These rulings were refused, and the issue generally whether the plaintiff's intestate assumed the risk that the post which gave way was defective or insufficient to hold the rope and serve as a barrier, was submitted to the jury under full instructions to which no exceptions were taken.   There is no evidence that he knew of the repairs that had been made on the post or that it had been renailed that morning, and there was nothing in its appearance, disclosed by the evidence, that under ordinary observation would indicate that it was insecurely or insufficiently fastened.   It is only open and obvious risks from defective or inferior ways, works and machinery that the employee can be said to assume by his contract of employment.   *Anderson* v. *Clark*, 155 Mass. 368, 370.   *Kleinest* v. *Kunhardt*, 160 Mass. 230.

*Exceptions overruled.*