# Laporte, Appellant, v. Pittsburg & Lake Erie Railroad Company.

*Negligence—Railroads—Fellow servant—Act of April 4, 1868, P. L. 58—Nonsuit.*

In an action against a railroad company to recover damages for personal injuries it appeared that the plaintiff was employed by a coke company to shift cars on three side tracks of the coke company, the cars being placed on the side tracks by the defendant, the railroad company. The railroad company each morning placed empty cars on the three side tracks, and the plaintiff's duty was to shift the cars on all three side tracks into position for loading in front of the ovens. This could be done by gravity without the aid of an engine. On the morning of the accident the railroad employees delivered cars on one of the side tracks, and the plaintiff was advised by the freight conductor that no more cars were to come on that particular track. Plaintiff then proceeded to work. The switch of the track on which the plaintiff was working had, through the neglect of some

one, been left open, and the cars which were intended for another of the side tracks ran through the open switch and started a car on which the plaintiff was working, severely injuring him. *Held*, that the plaintiff under the act of April 4, 1868, was a fellow servant of the railroad company's employees by whose neglect the switch had been left open, and that he was not entitled to recover.

Argued May 9, 1904. Appeal, No. 105, Jan. T., 1904, by plaintiff, from order of C. P. Fayette Co., Dec. T., 1902, No. 229, refusing to take off nonsuit in case of Mike Laporte v. Pittsburg & Lake Erie Railroad Company, operating the Pittsburg, McKeesport & Youghiogheny Railroad. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Trespass to recover damages for personal injuries.

UMBEL, J., filed the following opinion on motion to take off nonsuit:

The plaintiff lived at Adelaide, a small coke town in Dunbar township, at the time of the accident which occasioned the injuries complained of in this case. He was employed by the H. C. Frick Coke Company in the capacity of car shifter in connection with the operation of their coke works at that place. This plant includes five double blocks of ovens, and the product thereof, which is considerable, is shipped out over the Pittsburg, McKeesport & Youghiogheny Railroad, which is operated by the defendant. The main line of the railroad is some distance from the ovens, and the empty cars are supplied and the loaded ones removed by a branch, which for some distance from the main line consists of but a single track, but to serve all the five double blocks of ovens, some of which appear to be located parallel to each other, it is necessary that they have other lines off the main branch, and as a consequence the coke company maintains three tracks in connection therewith, known as "front track No. 2," "back track No. 2" and "back track No. 3."

It is not questioned but that these tracks, as well as the branch itself from the right of way of the main line of the railroad, are the property of, and maintained by, the H. C. Frick Coke Company, and the use of the railroad company is

limited to moving in the empty cars and taking out the loaded ones.

The switch tracks above designated are constructed on such grades that the use of an engine is not necessary in placing the cars to the points for loading along the coke yard; they are brought in by the engine and located in a bunch on each of the above named side tracks and then distributed along at the loading places or bridges by two men with the aid of gravity and crowbars. These men are called car shifters and such was the employment of the plaintiff and he was acting in discharge of his duties when he was hurt September 14, 1901.

At an early hour that morning he was around the works waiting for the railroad people to deliver the cars on the side tracks; and about four o'clock they brought in and left a number of cars on back track No. 2, and after being advised by the freight conductor that no more cars were to come in on that track the plaintiff proceeded to place them along that siding at the proper places for loading and the railroad crew withdrew their engine from back track No. 2 and proceeded to put empty cars in on the other tracks to supply the ovens that were not reached by back track No. 2. A few minutes thereafter while plaintiff was engaged between the rails on back track No. 2 at the end of the car from the switch connection, the car on which was loosened some kind of a hook in connection with the brake, suddenly started and the force operating to move it was of such character as to cause the car to knock him down and drive it over him, bruising and injuring him to such extent that the doctor who was at once sent for says, " I considered the man dying when I saw him." He was sent to the hospital, however, and, after lingering many weeks, in a measure recovered although he insists that his injuries, which were doubtless very serious, are of a permanent character and that in comparison with his previous self he is not a half a man.

It was discovered that the car that ran over the plaintiff was started by being struck by some empty cars which were being pushed by the engine, intended for delivery on one of the other tracks but through the oversight and neglect of some one, the switch connecting back track No. 2 with the main siding or branch had been left open and instead of passing and going to the track for which they were intended, they ran in on back

track No. 2, striking the cars as aforesaid and thereby occasioning the injuries to the plaintiff.

These are the material facts in this case and on which the plaintiff insisted that he is entitled to recover damages for the injuries inflicted, and in view of the authority of Spisak v. B. & O. R. R. Co., 152 Pa. 281, we are of opinion that the case is a rather close one.

If when the conductor advised the plaintiff they were done on the track (back track No. 2), their work on the coke plant entire had been completed and the engine and crew had left the coke company siding and gone about other work on the main line or other branches of the railroad and then later had returned with other empties or for the purpose of removing loaded cars before being advised that they were ready for removal, or for other purposes, and the accident had happened, we do not think there is any doubt but that the principles of the Spisak case would prevail and the case should have gone to the jury, but that is not this case here, even though the conductor had told the plaintiff they were done on back track No. 2, they had not completed their work on that coke yard and the other tracks and until they were so done it was the duty of the plaintiff and all employees thereabouts to act accordingly until such time as the railroad crew had finished on all these tracks and left the premises. We are of opinion that under the circumstances of this case the act of 1868 applies and the railroad crew and car shifters are in legal effect coemployees while working on the yard together, each performing the duties incident to their several particular employments.

We are largely influenced in arriving at this conclusion by the principles enunciated and applied in Cummings v. P. C. & St. L. Ry. Co., 92 Pa. 82, and the cases in which it has been distinguished and followed down to the present.

In our opinion the facts in the Cummings case are almost exactly analogous to the facts of the case at bar. Cummings worked on a coal yard owned by McCue, the cars to which were delivered by means of a branch or side track and then by a switch and short track into the coal yard. The coal was brought from the mines by the railroad company and when cars got to the yard they were transferred from the main track to the side track and from the side track in on McCue's track at the coal

yard.   A short distance from McCue's track there was another coal yard track belonging to the National Coal Company on which cars were delivered in the same way.   At the time in question the railroad company brought in twelve cars on the siding, six for McCue and six for the National Coal Company.   McCue's were placed on his track and the plaintiff and another man proceeded to unload them; the locomotive then with the other six ran back on the side track and so far as McCue's track was then concerned they were done until such time as they were to come for the empty cars but their work on the siding was not yet completed; the other six were to be put in on the National Coal Company track and for that purpose the engine with the said six cars, after having withdrawn from the McCue track, came ahead at a rapid rate intending to pass McCue's coal yard and shove them in on the National Coal Company's siding.

When the locomotive and train drew back from McCue's siding it was the duty of those in charge to change the switch connecting McCue's track with the siding so as to direct and send the train on its return past McCue's siding and upon the siding of the National Coal Company.   This was neglected, the switch was not turned and when the train returned it ran back again upon McCue's track and collided with the cars previously left there, injuring the young man Cummings who was one of the parties engaged on the cars on the McCue track in unloading, by which injuries he lost a leg.

In the case at bar the train first passed from the main line to the side track and from the side track by switch to back track No. 2 (corresponding to McCue's track) and left cars (same as six left on McCue's track) then pulled out again on the siding for the purpose of placing cars on siding further up past switch connecting back track No. 2 with the siding; when it pulled out from back track No. 2 those in charge failed to turn the switch, same as in Cummings's case; and when engine returned to place cars on other track (corresponding to National Coal Company's track) instead of passing by back track No. 2 the cars ran in on back track No. 2 colliding with cars previously left there and occasioned the injuries to the plaintiff as aforesaid.

A nonsuit was entered in the Cummings case and on appeal

was affirmed. If such were not error in that case we are of opinion that a nonsuit should stand in this.

*E. C. Higbee*, with him *L. A. Howard*, for appellant.—The case is not within the act of 1868: Vannatta v. R. R. Co., 154 Pa. 262; Noll v. R. R. Co., 163 Pa. 504; Kelly v. Union Traction Co., 199 Pa. 322; Keck v. Phila. & Reading R. R. Co., 206 Pa. 501.

*W. J. Sturgis*, with him *George D. Howell*, for appellee.— Laporte while employed by the Frick Company was yet employed for duties ordinarily those of a railroad employee, to wit: moving cars, and he was also so engaged upon the property of the railroad company, for while the title of the siding was in the Frick Company yet the siding was the road of the railroad company for the purpose of moving their trains, and that is sufficient to bring the case within the act of 1868: Mulherrin v. Del., etc., R. R. Co., 81 Pa. 366; Weaver v. Phila. & Reading Ry. Co., 202 Pa. 620; Cummings v. Ry. Co., 92 Pa. 82; Colvin v. B. & O. R. R. Co., 118 Pa. 230; Stone v. Penna. R. R. Co., 132 Pa. 206; Peplinski v. Penna. R. R. Co., 203 Pa. 52; Peterson v. Penna. R. R. Co., 195 Pa. 494.

PER CURIAM, June 15, 1904:

The judgment is affirmed on the opinion of the learned judge of the common pleas.