CHARLES A. WAGNER *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.     March 21, 1905. — June 21, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Negligence.     Elevated Railway Company.     Contract.*

In an action by a workman employed by a sub-contractor to rivet steel upon a certain portion of the elevated structure of the Boston Elevated Railway Company then in process of construction under St. 1894, c. 548, against that company, for injuries caused by being thrown from a temporary platform, by loose planks of the platform on which the plaintiff was standing being knocked off by the trolley pole of an electric surface car of the defendant flying up and striking them as the car was passing around a curve, there was evidence that the trolley wire sagged, but that in running slowly around the curve, as all the motormen were ordered to do and as all of them previously had done, the trolley pole would not become disengaged, and that the car which caused the accident was running contrary to orders at an unusual rate of speed. *Held,* that the questions of the due care of the plaintiff and the negligence of the defendant were for the jury, and that it also was a question for the jury whether the plaintiff, knowing that the cars slackened their speed in passing over the curve, voluntarily assumed the risk of an accident from their running faster.

In an action against an elevated railway company by a workman employed by a sub-contractor in building a portion of the defendant's elevated structure in process of construction under a contract between a principal contractor and the defendant, for injuries alleged to have been caused by the negligence of the defendant, the rights of the plaintiff are not affected by the provisions of a contract between the principal contractor and the defendant in regard to accidents to workmen.

TORT, for personal injuries, against the Boston Elevated Railway Company, by a workman employed to rivet steel by Terry and Tench, sub-contractors, having a contract with the A. and P. Roberts Company, the principal contractor, to build a portion of the elevated structure of the defendant, the whole of certain lines of which the A. and P. Roberts Company had contracted with the defendant to construct. Writ dated December 14, 1899.

At the trial in the Superior Court before *Bishop,* J., it appeared that the accident occurred on November 24, 1899, in front of the cathedral on Washington Street in Boston.

There was a provision in the contract between the defendant and the principal contractor that the defendant might affix its

trolley wires for the running of surface cars to the elevated structure. The trolley wire for the surface cars was suspended about eighteen inches below the cross braces from a wooden plank running longitudinally and hanging from the cross braces. This suspension of the trolley wire was for the use and convenience of the defendant in running its surface cars and was not a part of the work undertaken by the A. and P. Roberts Company or by Terry and Tench in building the elevated structure. The defendant attached its wires to the elevated structure as the work went on, following the work.

The plaintiff was engaged in riveting the iron pieces which had been put in position. There were short planks put crosswise and fitted into the flange of the girders and upon these short planks other planks about sixteen feet long were placed lengthwise of the track. Upon the last named planks the plaintiff was standing. At this point the surface track was upon a curve and the elevated structure was in process of construction upon the same curve.

The plaintiff testified that, as he was standing upon the planks engaged in his work, a surface car of the defendant came around the curve at a high rate of speed and that the trolley wire was loose and sagged at this place, that the trolley pole flew off the wire and up under the planks with great force, knocked the planks off the flanges of the girders, and threw the planks and himself into the air, and that he fell with the planks upon the ground and received the injuries complained of. Other material facts are stated in the opinion.

The defendant requested thirteen rulings. Of these the judge refused to make the following:

"1. On all the evidence the plaintiff is not entitled to recover, and the verdict should be for the defendant.

"2. On the evidence the plaintiff assumed the risk of the accident which occurred, and cannot recover.

"3. The defendant having entered into a contract with the Roberts Company to build the elevated structure, and by the terms of the contract the defendant having the right to attach its wires to the structure when erected for the purpose of running its cars, and the Roberts Company having agreed to assume the risk of injuries to its men or materials by reason of accidents

arising therefrom, the plaintiff, having engaged in the work either under the Roberts Company or its sub-contractors Terry and Tench, must be held to have assumed the risk to the same extent as the Roberts Company so far as this defendant is concerned, and he cannot recover.

"4. There is no evidence to justify the jury in finding that the defendant owed the plaintiff any duty, or that it was guilty of any negligence towards him on the occasion in question."

"9. Even though the jury may find that the car was run at an unsafe rate of speed, still, if the plaintiff knew, or by the exercise of reasonable care might have known, that such a thing was liable to occur, then he assumed the risk of it and cannot recover.

"10. The defendant would not be liable to the plaintiff for the negligence of the motorman or conductor in running or operating the car on the occasion in question.

"11. The plaintiff must be held to assume the risk of ordinary negligence on the part of the servants of the defendant in carrying on its business or incident thereto."

The jury returned a verdict for the plaintiff in the sum of $2,000 ; and the defendant alleged exceptions.

*P. H. Cooney*, (*L. F. Hyde* with him,) for the defendant.

*S. A. Fuller*, for the plaintiff.

BRALEY, J.   At the time the plaintiff received his injuries he was helping to build an elevated railway for the defendant within the location granted to it by St. 1894, c. 548.   The part upon which he was engaged was being built by his employers under a contract with the A. and P. Roberts Company, who had a general contract with the defendant to build the entire structure.   It follows, and is to be assumed, that he was lawfully upon the premises by the defendant's invitation, who thus owed to him the duty of using due care to prevent his being injured from exposure to unusual dangers not known to him that might be caused by the negligent running of its surface cars beneath the platform where he was at work.   *Wendell* v. *Baxter*, 12 Gray, 494.   *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368.   *Corrigan* v. *Union Sugar Refinery*, 98 Mass. 577. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216.   *Severy* v. *Nickerson*, 120 Mass. 306, 307.   *Shea* v. *Gurney*, 163 Mass. 184. *Cowen* v. *Kirby*, 180 Mass. 504.

There was evidence on the part of the plaintiff which tended to show that the platform upon which he stood was suspended over a curve in the surface track, and although the trolley wire sagged, the trolley pole would not become disengaged if the car ran slowly.

It further appeared that the car the trolley pole of which caused the accident was running at an unusual speed of from five to seven miles an hour notwithstanding orders had been given by the defendant to its motormen to reduce speed when passing under the overhead structure where the men were at work. An electrical expert, who testified in behalf of the plaintiff, stated that if the conducting wire was slack, and the car moved rapidly, the trolley would be thrown, for the higher the speed the more danger there was of such an occurrence.

If this testimony was believed, the jury could find that through the negligence of the defendant's servants the trolley pole left the conducting wire, flew up, struck the platform, and by the violence of its impact caused it to fall.

The defendant, however, urgently claims that the plaintiff was not in the exercise of due care, and that by his conduct he assumed the risk of all accidents that might arise under his employment, even if caused by its negligence.

To support this contention it principally relies on the case of *Woodley* v. *Metropolitan District Railway*, 2 Ex. Div. 384. It was there said by the majority of a divided court that the plaintiff had assumed the risk of negligence on the part of the defendant's servants, though at the time of his injury he was in the employment of a contractor, and rightfully upon the defendant's premises under his master's contract.

But it was held in the later cases of *Yarmouth* v. *France*, 19 Q. B. D. 647, *Thrussell* v. *Handyside*, 20 Q. B. D. 359, 365, and *Smith* v. *Baker*, [1891] A. C. 325, that knowledge by the servant did not conclusively limit the liability of the master, and it was a question of fact whether he voluntarily took the chance of injury.

This last case was referred to with approval in *Mahoney* v. *Dore*, 155 Mass. 513, 519, where it was said by Mr. Justice Knowlton, " We are not aware of any adjudications in this Commonwealth which are necessarily inconsistent with this just

and reasonable doctrine, although different opinions have been expressed on this point by eminent judges both here and in England."

If a servant assumes known and obvious risks, mere knowledge that they exist is not sufficient, as there must be a voluntary exposure of himself, with a full appreciation of the danger that may be incurred. *Leary* v. *Boston & Albany Railroad,* 139 Mass. 580. *Scanlon* v. *Boston & Albany Railroad,* 147 Mass. 484. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. It is true that these suits were by a servant for his master's negligence which was not impliedly assumed by his contract of employment. But as the doctrine is held to be applicable where, as in the present case, this relation does not exist, to bar a recovery similar conditions of knowledge and consent must be found. *Wood* v. *Locke,* 147 Mass. 604.

Because they were not subject to the control of a common master, the plaintiff was not in any sense a fellow servant of the defendant's employees. *Morgan* v. *Smith,* 159 Mass. 570. *Reagan* v. *Casey,* 160 Mass. 374. *Delory* v. *Blodgett,* 185 Mass. 126. *Smith* v. *Steele,* L. R. 10 Q. B. 125.

The plaintiff's evidence was to the effect that up to the time of his injury he had observed that the speed of the cars slackened when they passed over the curve, and the pole followed the trolley wire. Whether in the exercise of due care he ought reasonably to have anticipated that they might run faster, with the corresponding probability of injury to himself, or whether by his conduct he willingly exposed himself to what finally occurred, were issues of fact for the jury. *Powers* v. *Boston,* 154 Mass. 60, 63. *Hannah* v. *Connecticut River Railroad,* 154 Mass. 529, 533. *Ryan* v. *New York, New Haven, & Hartford Railroad,* 169 Mass. 267, 271. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586.

The plaintiff then cannot be held as a matter of law to have been negligent in placing himself in a position concerning the full danger of which he says he had no knowledge simply because he chose to continue his work in a place provided for him by his employer. *Mahoney* v. *Dore, ubi supra. Bell* v. *New York, New Haven, & Hartford Railroad,* 168 Mass. 443. *Murphy* v. *Marston Coal Co.* 183 Mass. 385, 388.

But the defendant further contends that the plaintiff agreed to incur the particular danger by which his injuries were caused, and therefore he cannot recover.

By the usual contract of employment it is settled, whether at common law or under R. L. c. 106, § 71, that the servant impliedly agrees to take things as he finds them, and for the wages paid to expose himself to the ordinary dangers incidental to the service, but this does not include concealed risks or subsequent negligence of the master.   *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135, 136.   *Garant* v. *Cashman,* 183 Mass. 13.

Here the plaintiff sustained no contractual relation to the defendant whatever, unless it be found in the general contract for the entire work.   To this agreement he was not a party, neither is there any evidence that it was brought to his knowledge.   Moreover, he was in the employment of contractors who not only were strangers to it, but also are not shown to have known of its terms.   *Abbey* v. *Chase,* 6 Cush. 54.   *Burt* v. *Boston,* 122 Mass. 223, 227.   *Leydecker* v. *Brintnall,* 158 Mass. 292, 297.  *Railton* v. *Taylor,* 20 R. I. 279.

If this contract could be treated as creating an exemption of the defendant from liability for injuries caused to the plaintiff by its negligence while in its employment such an agreement would be in violation of R. L. c. 106, § 16, and unenforceable. But as the relation of master and servant did not exist a general release by him would have been valid.

In the building of the elevated railway the contract provided that the work of construction should proceed in connection with the usual operation of the surface road, which was located directly under the overhead structure.   That during the progress of the undertaking accidents thereby might be caused to the employees of each of the contracting parties, or to others whether passengers upon the defendant's cars or travellers upon the public ways, was apparent.

Upon an examination of its provisions so far as they relate to the question raised, the contractor agrees to indemnify the defendant for all damages it may sustain by reason of suits, by whomsoever brought, for injuries arising from the negligence of workmen, who may be employed under the contract, but for which the defendant primarily would be responsible.   *Carleton* v.

*Franconia Iron & Steel Co., ubi supra. Sturges* v. *Theological Education Society*, 130 Mass. 414. *Woodman* v. *Metropolitan Railroad*, 149 Mass. 335.

The only language found which gives even a semblance to the defendant's argument is contained in § 55 : " The company will not be responsible for any accidents caused by the trolley, feed, or other wires, to men or materials upon or about the work in connection with the performance by the contractor of his work hereunder, and the contractor agrees to hold the company harmless and indemnified from any claims in respect to such accidents." In our opinion this clause does not support such a view.

The instructions under which the case was submitted to the jury were full and accurate, and so far as proper the rulings requested by the defendant were adopted.

*Exceptions overruled.*