JOHNSON v. E. C. CLARK MOTOR CO.

1. MASTER AND SERVANT—NEGLIGENCE—PERSONAL INJURIES.
Plaintiff was in the employ of a corporation with which defendant company had contract relations for the manufacture and sale of motors, and was sent by his employer to defendant's factory to assist in the inspection and testing of goods that defendant was engaged under contract in manufacturing for his employer. While doing his work of testing a motor, he found it necessary or convenient to put his hand through the pulley, by means of which power was transmitted to the machine, and was injured by the unanticipated starting of the machine by a servant of defendant, with whom plaintiff was working, and who knew plaintiff was in a dangerous situation if the machine should start, but forgot the fact for an instant. *Held*, that the servant of defendant was not free from negligence, as matter of law, and was not plaintiff's fellow-servant.

2. SAME—FELLOW-SERVANT.
Servants of separate masters, although engaged in a common

undertaking, are not fellow-servants. To constitute that relation servants must be in the employ or under the control of a common master.

3. SAME—VOLUNTEER—FELLOW-SERVANT.
    One who, having no interest in the work, voluntarily assists the servant of another, cannot recover from the master because of injuries done by the servant, since he cannot obtain greater rights than a hired employé.[1]

4. SAME.
    But such volunteer is to be distinguished from one assisting the servants of another for the purpose of expediting his own business or that of his master: if he is injured under such circumstances he is entitled to recover for negligence.

5. SAME—CONTRIBUTORY NEGLIGENCE.
    The objection that plaintiff was guilty of contributory negligence because he selected a dangerous instead of a safer manner of doing his work was erroneously sustained by the trial court: the way was safe, if defendant's servant had not negligently started the motor, and plaintiff was not bound to anticipate his wrongful act.

6. SAME—EVIDENCE—RES GESTÆ.
    What was said and done by plaintiff and his fellow workmen immediately before and at the time of the injury was competent: also testimony relating to the practice in carrying on the work.

Error to Jackson; Parkinson, J. Submitted October 17, 1912. (Docket No. 144.) Decided December 17, 1912.

Case by Frank M. Johnson against the E. C. Clark Motor Company for personal injuries. A judgment for defendant upon a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Price & Whiting*, for appellant.
*Wilson & Cobb*, for appellee.

[1] As to who is a volunteer, and liability for injuries to, see note in 16 L. R. A. 861, and on the latter question see also notes in 13 L. R. A. (N. S.) 561, and 16 L. R. A. (N. S.) 963.
As to liability of master for injury to an emergency assistant, see note in 40 L. R. A. (N. S.) 1180.

STONE, J.   This is an action on the case brought to recover damages resulting from an injury in which the plaintiff lost his right hand and forearm on March 2, 1908.   The defendant operated shops in the city of Jackson, where it manufactured gasoline motors.

The Jackson Automobile Company, another manufacturing company of the same city, had an arrangement with the defendant, whereby it purchased the motors of defendant, which were tested and inspected at the shops of the defendant before they were accepted by the Jackson Automobile Company.   The work of inspection was done in a room of defendant, called the testing room, which was off by itself on the ground floor at the back end of the main building of the defendant.   The defendant had a man named Crankshaw in its employ, who was present in this room to exhibit the motors and represent it at the tests; and the plaintiff was there in the employment of and representing the Jackson Automobile Company to see that the motors were up to a certain standard before they were accepted by the latter company.   The defendant manufactured two different styles of motors, one of which was known as model "E," and the plaintiff was injured while getting ready to apply the belt test to a motor of this model.

The plaintiff was instructed by his employer, the Jackson Automobile Company, to go to the defendant's factory and see that the motors were tested, and that they came out right, to avoid trouble after the motors came to the Jackson Automobile Company.   He was instructed by his employer to have each motor "pulled under a load," and to that end the testing room aforesaid was furnished with a dynamo and electrical fixtures, so that the motor could be run under a load, in order to develop and correct any imperfections and determine its horse power.   The method of operation was substantially as follows:   The motor was set upon a stand on the floor of the testing room, and a belt run from the pulley on the transmission shaft of the motor to the line shaft; and the belt from this

line shaft in turn drove the dynamo and generated the electricity, which, by the aid of electrical instruments, determined the horse power. In other words, the gasoline motor or engine drove the line shaft, the latter in turn drove the dynamo, and the dynamo operated the electrical instruments which determined the horse power.

The motors were assembled in another part of defendant's factory, and were then brought into the testing room. Plaintiff's inspection commenced as soon as they were brought into the testing room, and the motors would be on the stand from five to eight or ten hours before they would be passed. The plaintiff, in the course of examining and testing these machines, would go all over them and do whatever came in his way to do, or was necessary, in order to satisfy himself that the machines were in perfect working order. The plaintiff and defendant's representative worked together a great deal of the time, and if any trouble or peculiar noise was detected sometimes one would locate it and sometimes the other, when the proper steps were taken to remedy it. In manipulating the motors or machines the plaintiff "did whatever suited his fancy," and this was done sometimes after defendant's representative had got through with them; and sometimes he would call attention to something that had been developed in running a motor "before the motor run 30 minutes." If a pulley was loose and required tightening, or if the belt was to be put on in the course of examining the machines, sometimes plaintiff would do it, and sometimes the defendant's representative would do it. It was customary for either one to do it, just as it happened to be convenient. The last thing to be done in testing these motors was to take what was called the dynamo test, or belt test, by which the horse power was determined. For the purpose of making this belt test, a pulley was placed upon the transmission shaft of the motor, from which a belt was run to the main shaft, as explained before. This pulley was used for no other purpose.

The plaintiff and Crankshaw had been working at this

business for about three months before the injury complained of. On the day in question the motor had been upon the stand undergoing inspection and examination during the forenoon, and when the noon recess came there was practically nothing left to be done but to take the belt test. When plaintiff returned to the shop after the noon recess, he went over to where the motor was to proceed with the test. The motor was not then running, was still, and Crankshaw, who was to take part in the test, was standing by it. When plaintiff got to the motor, he found that the pulley upon the transmission shaft of the motor to which they would have to apply the belt, in order to make the test, was loose. He wiggled the pulley, and as Crankshaw saw him doing this, and saw that it was loose, he said to plaintiff, " Ain't that d———d thing ready yet?" To which plaintiff replied: " No; there is no key in it. I will fix it." Plaintiff then reached and picked up the key, which was on a little shelf next to him, and inserted it into the shaft, pushed the pulley, and started to screw up the follower with a wrench. The follower bound a little, as was often the case with new motors, which made it necessary to engage the transmission shaft, so as to hold it while the follower was turned up. This was done by operating what was called "the gear-shifting rod," and in order to do this it was necessary to push hard on the rod. The plaintiff testified that the only way that he could do that was to put his hand through the pulley, so as to get a direct push on the rod. He further testified that this was the ordinary and most convenient way of doing this. Just before the plaintiff came over to the motor, Crankshaw had been running it, and had detected a rattling in a valve, and, stopping the motor, he had remedied the rattling, which was a matter of minor importance, and was adjusted by turning a little set screw.

In order to start the motor, it was usually necessary to crank it, the same as an automobile; but sometimes it would start under its own compression, when the electric

switch or button was turned. This button was on the wall about midway of the motor, and near where Crankshaw stood, so that all he had to do to turn this button was to reach up and touch it.

After having the conversation with plaintiff above related, and while the plaintiff was bent over tightening the pulley, and had his right hand through the spokes of the pulley to push the shifting rod, Crankshaw reached up, turned the switch, set the pulley in motion, and so injured the plaintiff's right arm that it had to be amputated.

The pulley revolved rapidly; would start off at from 500 to 2,000 revolutions a minute. Crankshaw testified that plaintiff in putting his hand through the spokes was acting in the customary and convenient way, and in the way which he had done himself, and had seen others do it. He did not know and could not tell why he had turned the switch and started the machine, and testified that he would not have thrown the switch had he thought of plaintiff's position; that he forgot for the instant plaintiff's position, though he knew that plaintiff was at the pulley. As soon as Crankshaw had thrown the switch and set the machine in motion, he realized what he had done, and immediately threw the switch back and stopped the machine; but it was too late to save plaintiff's hand. Had he not set the machine in motion, it was perfectly safe for the plaintiff to put his arm through the pulley and push the shifting rod as he did.

The foregoing statement of facts was somewhat modified by the plaintiff and Crankshaw (the only witnesses sworn) on cross-examination, and we have stated the case in the light most favorable to the plaintiff, as warranted by the evidence.

At the close of the plaintiff's case, defendant's counsel moved the court to direct a verdict for the defendant upon the following grounds:

(1) That no negligence of the defendant had been shown.

(2) That the plaintiff was guilty of contributory negligence.

The motion was granted, and a verdict for the defendant was directed by the court upon both grounds stated, and a judgment for the defendant was entered.   The plaintiff has brought the case here for review, and many errors are assigned.   The twenty-seventh assignment of error is to the effect that the court erred in directing a verdict for the defendant, for the reason that under the evidence in the case the question of the defendant's negligence, as well as the question of plaintiff's contributory negligence, were questions which should have been submitted to the jury.   This assignment of error raises the meritorious questions in the case.

1. Was there evidence of defendant's negligence?   This question involves another:   Were the plaintiff and Crankshaw fellow-servants?

The trial court charged the jury that if Crankshaw was guilty of negligence the defendant would be responsible for his negligence.   We cannot agree with the trial court that, as matter of law, Crankshaw was not guilty of negligence.   Whether he failed to exercise such care, prudence, and forethought as duty required to be given or exercised under the circumstances was, at least, a question for the jury.   The negligence of Crankshaw, if any, must, under the evidence, be imputed to the defendant, unless the plaintiff and Crankshaw were fellow-servants, or unless the plaintiff was a mere volunteer.

The undisputed evidence shows that the plaintiff was in a distinct and separate employment from that of Crankshaw, and they were in no sense under a common master, or subject to the same control.   *Kastl* v. *Railroad Co.,* 114 Mich. 53 (72 N. W. 28).

In 26 Cyc., at page 1284, the rule is stated as follows:

"Servants of separate masters, although engaged in a common undertaking, are not fellow-servants.   To constitute that relation servants must be in the employ, or

under the control of, a common master"— citing many cases, English and American.

In 2 Thompson on Negligence, at page 1040, that author says:

"Nearly all the definitions of fellow-servants given in the books make it essential to the relation that they should be servants of the same master"—citing *McAndrews* v. *Burns*, 39 N. J. Law, 119, where it was said, "They are not fellow-servants unless they are all under the direction and control of a common master," also citing Shearman & Redfield on Negligence, § 116, and other cases.

Because they were not subject to the control of the common master, the plaintiff was not in any sense a fellow-servant of defendant's employé. *Wagner* v. *Railway Co.*, 188 Mass. 437 (74 N. E. 919), citing *Morgan* v. *Smith*, 159 Mass. 570 (35 N. E. 101); *Reagan* v. *Casey*, 160 Mass. 374 (36 N. E. 58); *Delory* v. *Blodgett*, 185 Mass. 126 (69 N. E. 1078, 64 L. R. A. 114, 102 Am. St. Rep. 328).

Instances may be found where one servant may become, *pro hac vice*, the servant of another master, so that the servants of the latter will be his fellow-servants. The following cases illustrate this rule:

In *Laporte* v. *Railroad Co.*, 209 Pa. 469 (58 Atl. 860), plaintiff was employed by a coke company to shift cars on a side track of the company; such cars being placed thereon by defendant railroad company, which every morning placed cars on the tracks. Plaintiff's duty was to shift the cars on a side track in front of the ovens of the coke company. On the morning of the accident the cars were delivered on one of the side tracks, and plaintiff was advised by the freight conductor that no more cars were coming on such track. The switch had negligently been left open on the track on which plaintiff was working, and cars intended for another side track ran through the switch and injured plaintiff. Held that, under the act of April 4, 1868 (P. L. 58), the railroad crew and car shifters were coemployés while working in the yard to-

gether, and plaintiff could not recover. This case seems to turn upon the provisions of the statute, which are in substance:

" When any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company * * * of which company such person is not an employé, the right of action to recover in all such cases against the company shall be such only as would exist if such person were an employé."

See *Davis* v. *Button*, 78 Cal. 247 (18 Pac. 133).

In *Quinn* v. *Refining Co.*, 102 App. Div. (N. Y.) 47 (92 N. Y. Supp. 95), plaintiff was employed, at the time of his injury, by a lighterage company transporting sugar to a dock of defendant sugar refining company, and in such work a winch belonging to the refining company, operated by steam and an engineer furnished by it, was used by the lighterage company, which paid the refining company an agreed price per hour for such use. Plaintiff was injured by the negligence of such engineer. Held that, though the refining company was in a measure interested in the work, the engineer, under such circumstances, was plaintiff's fellow-servant, for whose negligence the refining company was not liable. The doctrine of the case seems to be that where there is unity of service and control in any particular employment, even though one of the servants is in the general employ of another, the law is well established that they are to be treated as coservants as to the particular employment in which they are at the moment engaged, citing *Wyllie* v. *Palmer*, 137 N. Y. 248–258 (33 N. E. 381, 19 L. R. A. 285), *Higgins* v. *Telegraph Co.*, 156 N. Y. 75–78 (50 N. E. 500, 66 Am. St. Rep. 537), and *Longa* v. *Elevator Co.*, 69 N. J. Law, 31 (54 Atl. 251).

In this last case the servant of Whan, while in a safe place and free from danger in doing his master's work, at the request of the engineer of the elevator company, which was engaged in an independent employment over

which Whan had no control, attempted to loosen the elevator which had stuck fast, and while doing so was killed. Held, that the elevator company was not liable; that if the engineer had authority to employ the decedent they were fellow-servants; if he had no such authority the decedent was a mere volunteer. This case seems to have been disposed of upon the question as to whether the engineer of the elevator company had authority to employ the decedent to assist him in loosing the elevator; and it was said that, if he had such authority, then decedent was a fellow-servant of the engineer, and the plaintiff could not recover. And if the engineer had no such authority from his employer, then the decedent was a mere volunteer, and the company was without liability. We are of opinion that the plaintiff and Crankshaw were not fellow-servants.

Was the plaintiff a mere volunteer?

It is earnestly urged by defendant's counsel that the plaintiff was a mere volunteer in the particular work in which he was engaged when injured, and therefore cannot recover. The general rule is well stated in 26 Cyc., at page 1287, as follows:

"One who, having no interest in the work, voluntarily assists the servant of another, cannot recover from the master for an injury caused by the negligence or misconduct of such servant, since he can impose no greater duty on the master than a hired servant."

The same rule is stated in 2 Thompson on Negligence, at page 1045, but that author adds:

"Care must be taken, however, to distinguish the case of a mere volunteer from that of one assisting the servants of another, at their request, for the purpose of expediting his own business or that of his master. In such a case, he will not stand in the relation of fellow-servant to them; if he is injured by their negligence, the doctrine of *respondeat superior* will apply, and their master will be responsible. It is obvious that the real difficulty in these cases will be to determine, on the facts, whether the

person injured was a mere volunteer, or acting in the furtherance of his own or his master's business."

The author cites and quotes from the leading English cases of *Holmes* v. *Railway Co.*, L. R. 4 Exch. 254, affirmed in Exchequer Chamber, L. R. 6 Exch. 123; *Wright* v. *Railway Co.*, 1 Q. B. Div. 252.

The former of these cases was said, by Lord Coleridge, C. J., in the latter case, to be one of the greatest authority, because in the Exchequer Chamber seven judges affirmed the decision, for the reasons given by the judges in the Court of Exchequer.

In *Bonner* v. *Bryant*, 79 Tex. 540 (15 S. W. 491, 23 Am. St. Rep. 361), the case of *Eason* v. *Railway Co.*, 65 Tex. 577, was adhered to, which was to the effect that where one having no interest in the loading of a car, or in the carriage or delivery of passengers or freight, volunteers to assist in reference to such matters, and while thus engaged is injured, he stands in the same position as a regular employé engaged in the particular service, so far as the right of recovery for his injuries is concerned; but the case is different where the injured party was acting at the time in furtherance of his own or his master's business.   In the principal case 2 Thompson on Negligence, p. 1045, is cited.

In *Eason* v. *Railway Co.*, *supra*, the following language is used:

"Thus, when the owner of freight transported by a railway company was allowed to assist in its delivery, and, in so doing, was injured through the carelessness of the company's servants, it was held that he could recover damages of the company"—citing *Holmes* v. *Railway Co.*, L. R. 4 Exch. 254; *Wright* v. *Railway Co.*, 1 Q. B. Div. 252.   *   *   *

"The principle upon which a recovery is allowed is this:   The injured person is not a volunteer, but engaged at the request or with the permission of the railway's agent in a transaction of interest as well to himself or his master as to the railroad company, and this entitles him to the same protection against the negligence of the

company's servants as if he were at the time attending to his own private affairs. Though performing a service beneficial to both, he is doing so in his own behalf, and not as a servant of the company. Their request or acquiescence gives him the right to perform the service; the fact that he acts in his own behalf, however beneficial his labor may be to the company, gives him the right to be protected against the negligence of the company's servants."

In *Street Railway Co.* v. *Bolton,* 43 Ohio St. 224 (1 N. E. 333), the plaintiff was a passenger on defendant's street railroad on a car northward bound. The railway was a single track, with occasional side tracks for the passage of cars moving in the opposite direction. The north-bound car having been drawn beyond the side track, where it was to have met the south-bound car, it became necessary to push it back to the side track, so that the cars could pass and each proceed to its destination. At the request of the driver of the north-bound car, the plaintiff assisted him in pushing the car back to the side track. While so engaged, without fault on his part, he was injured by the carelessness of defendant's driver on the south-bound car. It was held that the plaintiff did not engage in the service of defendant as a mere volunteer, but that, under the circumstances, the plaintiff could not be considered as a fellow-servant with the driver of the south-bound car; and the doctrine of *respondeat superior* applies. The court says:

"But it does not follow that under all the circumstances, a person who assists the servants of another in the discharge of their duties, without employment by the master, is to be regarded as voluntarily assuming the relation of a fellow-servant, or the risks pertaining to that relation. To illustrate: Suppose a servant, in driving his master's team on the highway, founders in such a manner as to prevent the use of the highway by others for the time being. Another person, who is thus impeded in the use of the road, assists the servant, either with or without request, to remove the impediments to travel from the highway. Such other person does not thereby become

the fellow-servant of the driver.    Indeed, in no just sense has he voluntarily entered the service of the master.    And the rule of volunteer does not apply to the case supposed, and therefore it was not error in the court of common pleas to refuse it."

The case of *Wischam* v. *Rickards*, 136 Pa. 109 (20 Atl. 532, 10 L. R. A. 97, 20 Am. St. Rep. 900), states the general rule as to volunteers to be as claimed by counsel for defendant.    While it was held that if plaintiff was a mere volunteer he could not recover, the court says that, under the facts in the case—

"While it may seem a little strained to call such a person a mere volunteer, the reason given for the nonliability of the master is more substantial, to wit, that the plaintiff's act of associating himself with the defendant's servant in the performance of the work, was done without the knowledge or consent of the master; and therefore he could acquire no better position than that of the servant with whom he associated himself."

The case is finally disposed of upon the ground that the plaintiff became one of the servants to assist in the defendant's act of delivering the wheel.    The participation of the plaintiff was not that of an owner receiving his own goods, but was that of a servant assisting the servants of the defendant, and this circumstance brings it within the rule of nonliability.    This is an exceedingly close case, highly exceptional in its facts, and, as the court says, "apparently without precedent among the authorities."

The distinction is plainly pointed out in *Cargill* v. *Thompson*, 50 Minn. 211 (52 N. W. 648), cited by defendant.

A well-considered case, and one which reviews the authorities, both English and American, is that of *Kelly* v. *Tyra*, 103 Minn. 176 (114 N. W. 750, 115 N. W. 636, 17 L. R. A. [N. S.] 334).    In that case Jaggard, J., says:

"There is, however, an increasing class of cases in which the exercise of proportionate care is held to be due

to servants of different masters, who assist in the performance of a service mutually beneficial to such employers. Thus a servant of a shipper, who, to prevent delay, aids the servants of a carrier in shunting cars, is not a mere volunteer assisting defendant's servants, although on request, but is regarded as having been on defendant's premises with a purpose of expediting the delivery of his own goods. The carrier is liable to him for the negligence of its servants. [Citing cases.] * * * So one with an interest, who is requested by another's servant to assist in adjusting or fixing an instrumentality, is not a mere volunteer, but is within the rule requiring the exercise of due care. [Citing cases.]

" ' The distinction running through all the cases is this: That where a mere volunteer—that is, one who has no interest in the work—undertakes to assist the servants of another, he does so at his own risk. In such a case the maxim of *respondeat superior* does not apply. But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and at the request or with the consent of another's servants undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible. In such a case the maxim of *respondeat superior* does apply. The hinge on which the cases turn is the presence or absence of self-interest. In the one case, the person injured is a mere intruder or officious intermeddler; in the other, he is a person in the regular pursuit of his own business and entitled to the same protection as any one whose business relations with the master expose him to injury from the carelessness of the master's servants.'

" [Citing many cases.] "

Applying this rule to the facts in this case as claimed by the plaintiff, we must hold that the plaintiff was not a mere volunteer.

2. Was the plaintiff, as matter of law, guilty of contributory negligence? We think not. We are of opinion that it was a question for the jury. Upon this record it appears that the plaintiff had no reason to anticipate that Crankshaw would start the motor when he did. Plaintiff was proceeding in a perfectly safe manner but for the active and unexpected conduct of Crankshaw. The language of Justice BROOKE, in

*Wallin* v. *Railway Co.*, 172 Mich. 466 (138 N. W. 270), applies here:

"The claim of defendant that plaintiff should not be permitted to recover, because he selected the dangerous rather than the safe way of preparing for the coupling, is without merit.   When he attempted to open the coupler, both cars and engine were at rest, and he believed the engine would not move until its engineer received a signal from himself.   Had they remained stationary, there would have been no danger.   We think he was not bound, as a matter of law, to apprehend that the conductor would appear and give the signal for the operation.   His conduct, under the circumstances, in all its detail, was a proper subject for the consideration of the jury upon the question of his negligence."

3. As the case must go back for a new trial, some attention should be given to the assignments of error relating to the rulings of the court upon the admission of evidence.   We think that what was said and done by the plaintiff and Crankshaw immediately before and at the time of the injury was proper subject of inquiry; also as to what the practice had been in carrying on the work there.   Answers to questions covered by the first, second, fourth, eighth, and fourteenth assignments of error might well have been received.   The other questions covered by the assignments of error relating to the rulings upon the rejection of testimony were properly ruled upon.   Some of them relate to matters of mere speculation, and others relate to matters for the jury to determine, and were not matters of opinion.   The other questions discussed are not likely to arise upon a new trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.