THOMAS F. BAYNES, *p. a., vs.* HENRY A. BILLINGS *et al.*

JULY 8, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Master and Servant. Volunteers. Elevators.*

Defendants, owners of a building, leased its several floors to different parties. Plaintiff was employed by a tenant as errand boy, and, after alighting from the passenger elevator at the floor of his employer, was requested by the elevator-boy to go upon the top of the elevator to put in place a screen which was intended to prevent objects from falling into the elevator, but, owing to its being misplaced, had itself become a source of danger. While so engaged, the elevator boy started the elevator upward, and plaintiff, in attempting to get off, was caught and injured. The declaration alleged that the elevator was operated without being fitted with the mechanical device to prevent the car from being started while the doors were open, as provided by Gen. Laws, cap. 108 and its amendments:—

*Held*, that the question as to what instructions were given the elevator-boy

by defendants, and whether such instructions authorized him, under the conditions shown, to seek the assistance of the plaintiff, were questions of fact for the jury.

*Held*, further, that, if the authority was sufficient, plaintiff was on the top of the elevator by right, and was not a trespasser or volunteer.

*Held*, further, that, where an injury to a servant is caused by the concurrent negligence of the master and a fellow-servant, the master is liable

*Held*, further, that, if the elevator had been equipped with the device required by statute, it would not have been possible for plaintiff to have gone upon the top of the elevator in the first instance.

*Held*, further, that, under such statute, the doctrine of assumed risk was not a defence, and that the case should have been submitted to the jury on the questions of plaintiff's due care and defendants' negligence.

(2)  *Direction of Verdict.*

A verdict should not be directed if, on any view of the testimony, the plaintiff can recover.

TRESPASS ON THE CASE for negligence. Heard on exceptions of plaintiff, and sustained.

JOHNSON, J.    The defendants were the owners of a building, in the city of Providence, known at the "Billings Block." The several floors of this building were used for business purposes, and leased to different parties. Warren & Williams, jewelers, occupied the fourth floor, and the plaintiff was employed by that firm as an errand boy. The building was provided with a passenger elevator for the use and accommodation of tenants. This elevator, at the time of the accident—July 11, 1904—was being run by a boy named William George. Upon the day of the accident the plaintiff and another boy, named Gaynor, together entered the elevator at the street floor. Gaynor at that time was in the employ of the Western Union Telegraph Company, and had a message for delivery to a firm that occupied the fifth floor. Gaynor had previously been employed in the Billings block. After the plaintiff and Gaynor were safely on board, the elevator ascended to the fifth floor, the plaintiff remaining therein. The elevator then waited, at the fifth floor, for Gaynor to deliver his message and return, and the plaintiff still remained therein. Then the elevator descended to the fourth floor, where the plaintiff was employed, and he then alighted, and at the request of the elevator-boy went

upon the top of the elevator to arrange, straighten, or put in place a screen designed to protect people in the elevator from any objects that might fall down the elevator-well. To enable the plaintiff to gain access to and leave the top of the elevator when he had finished, the elevator was lowered, by George, so that the top was on a level with the fourth floor. While the plaintiff was engaged upon the top of the elevator the bell was rung at the fifth floor and the elevator started upward, and the plaintiff, in attempting to get off the moving elevator, was caught and injured. The case was tried in the Superior Court, with a jury, November 5, 1908, and at the conclusion of the testimony the court directed a verdict for the defendants.

The plaintiff has filed his bill of exceptions upon the following grounds:

" 1. To the ruling or decision of said justice at the trial of said action in granting the defendants' motion for the direction of a verdict for the defendants at the close of the plaintiff's testimony, as shown on page 71 of the transcript of testimony, etc., filed herewith.

" 2. To the ruling or decision of said justice at the trial of said action in directing the jury to return a verdict for the defendants at the close of the plaintiff's testimony, as shown on page 72 of the transcript of testimony, etc., filed herewith."

The statement in the grounds of exception, that a verdict was directed at the close of the plaintiff's testimony, is not correct. Testimony was offered on behalf of the defendants. The court first stated, in the absence of the jury, that he would direct a verdict and note an exception. Later, when the jury had been brought back, the court directed a verdict, and after the verdict was rendered for the defendant, noted the plaintiff's exception.

The plaintiff has set forth grounds of exception both to the statement of the court on page 71 and to the direction of the verdict on page 72 of the transcript, which accounts for there being two grounds of exception to the same import.

An additional count to the declaration was withdrawn at the opening of the case, and the trial proceeded upon the original declaration.

The plaintiff's declaration alleges that the defendants were the owners of the building known as Billings block, at number 21 Eddy street, in said city of Providence, and that an elevator for the carriage of passengers was then and there provided, maintained, and operated in said building, and that the defendants were negligent in not providing and keeping in repair for said elevator some suitable device to prevent the elevator-car from being started until the door or doors opening into said elevator-shaft were closed, as is provided and enacted under the provisions of section 16 of chapter 108 of the General Laws, as amended by chapter 921 of the Public Laws passed November 22, 1901, and as further amended by chapter 973 of the Public Laws passed April 3, 1902.

The plaintiff then avers that while he was rightfully in said building as the employee of Warren & Williams, and rightfully and lawfully upon said elevator, and in the exercise of due care, and while in the act of leaving and stepping from said elevator, the door at the fourth floor of said building being open, that suddenly said elevator shot up, catching him between the jam of the door and the elevator-cage, by reason whereof plaintiff was injured, etc.

Section 16 of chapter 108, General Laws, provides that: "Every passenger elevator shall be fitted with some mechanical device to prevent the elevator-car from being started until the door or doors opening into the elevator-shaft are closed."

Chapter 921 of the Public Laws retains the words above quoted, the changes effected by that chapter relating entirely to other matters.

Chapter 973 of the Public Laws also retains the same words without either qualification or modification, but some new provisions are added, among which are the following: "In all cases in which any person shall suffer injury . . . in consequence of the failure of the lessee or owner or owners of any building to comply with the provisions of this and the preceding section . . . such lessee and owner or owners shall be jointly and severally liable to any person so injured in an action of trespass on the case for damages for such injury. . . . It shall be no defence to said action that the person

injured . . . had knowledge that any elevator was being operated in said building contrary to the provisions of this and the preceding section, or that such person continued to ride in said elevator with said knowledge."

(1)   It was shown that the defendants were the owners of the building and elevator involved in the suit at the time the accident occurred; that the plaintiff, at the time of the accident, July 11, 1904, was about thirteen years old and was acting as an errand boy for Warren & Williams, who occupied rooms on the fourth floor of the building in question; that the elevator was a passenger elevator; that the plaintiff was returning to the place of business of his employers, and while riding upon the elevator was requested by the operator to adjust the screen on the top of the elevator; that after he alighted at the fourth floor the elevator was lowered by the operator, with the door open, so that he could step on the top of it, and he did so; that while he was on the top of the elevator, and while the door was open, the operator started the elevator, and he was caught between the top of the elevator and the doorway and was injured. There was testimony that the elevator could be moved, when the doors into the shaft were open, three or four weeks before the accident. It was so moved, on the day of the accident, to allow the plaintiff to get on the top. George, the elevator-boy, was employed by the owners of the building. George was nineteen years old at the time of the trial, November 5, 1908. He was therefore about fifteen years old at the time of the accident. The defendants did not offer any testimony as to the matter of the elevator being fitted with the device required by the statute, or as to whether the elevator could or could not be started when the door was open. The defendants testified as to instructions to the elevator-boy and as to the authority given him (Henry A. Billings): "Q. And will you please state what this boy was employed by you to do? A. To run the elevator. Q. Was he employed to do anything else? A. Nothing. Q. Did he have any authority to make arrangements about fixing the elevator? A. Not at all. Q. Did you give him any instruction at any time with reference to boys about the elevator? A. I gave him orders when

I hired him not to have boys fooling around the elevator, and I told him to keep the boys away and not have them around it at all." . . . "C. Q. Well, I want you to testify as to what you remember, Mr. Billings. It is easy to say that you probably had something to do about it. Will you tell the jury what was said to the boy George by yourself; just repeat what you said to him? A. About what his duties were? C. Q. Yes. A. Attend to the elevator and run it, look out for things and keep the boys away from it. C. Q. That was all? A. That is what I told him." In answer to the question: "If it (the screen) got misplaced wouldn't it be attending to the elevator to put it back in place?" he answered: "Why, if it was his duty to do it, or else the engineer who had charge of the place would do it. I don't know whether it would be the boy's business to do it or not." Later he testified that he thought "it would be the engineer's duty." "C. Q. So far as your instructions to this boy went you didn't give him any instructions about what he should do in case any part of the elevator should get out of order? A. I don't know as I ever gave the boy any instructions about it. C. Q. You left it to his own judgment what to do, if anything got out of order? A. I suppose he would report to me. C. Q. You gave him no instructions what to do in case it got out of order? A. No sir; I did not. C. Q. Then you left it to his judgment what to do in case anything got out of order, didn't you? A. I think it was that way then."

Frank Billings testified: "C. Q. What instructions did you ever give him in case anything got out of order? A. I never gave him any instructions at all." Later he said that the boys that run the elevator always go to the engineer if there is anything out of the way; that he told him to go to the engineer, and that he didn't mean that he gave him no instructions at all, and finally: "C. Q. Did you leave it to his own judgment for anything he didn't need the engineer for? A. I told him if there was anything he wanted the engineer for to get him. C. Q. And left it for him to say whether he needed the engineer or not; is that right? A. I suppose so."

(2)    A verdict should not be directed if, on any view of the testimony, the plaintiff can recover.   Upon the testimony the plaintiff was lawfully in the building, and was lawfully riding in the elevator, when, on his arrival at the fourth floor, he was requested, upon alighting, to go upon the top of the elevator and adjust the screen.   This screen was intended to keep things from falling into the top of the elevator and upon persons in the elevator.  The plaintiff, at the request of the operator, went upon the top of the elevator, after it had been lowered by the operator so that its top was even with the floor.  It was thus lowered while the door was open, and when the plaintiff had adjusted the screen and was in the act of leaving the top of the elevator through the open door, a bell rang and the operator started the elevator upward, and the plaintiff was thereby injured.   The plaintiff, when asked what was the matter with the screen, said:  "It had been half off, just turning around, half off, liable to fall through."   According to his testimony, then, the screen intended to protect passengers from objects which might fall from above had turned, and had itself become a source of danger, liable to fall through.   Under such circumstances was it unreasonable that the operator should ask the plaintiff to go on the top and fix the screen, when its condition menaced the safety of the operator and passengers in the elevator?   Is it clear that any instructions were given to the operator which would preclude such action on his part?  The testimony of the defendants as to the instructions to the operator is confused and conflicting.   In *Poulton* v. *London & South Western Railway Co.*, L. R. 2 Q. B. 538, cited by this court in *Staples* v. *Schmid*, 18 R. I., at page 229, Blackburn, J., says:  "There can be no question that where a railway company, or any other body, have upon the spot a person acting as their agent, that is evidence to go to the jury that that person has authority to do all those things on their behalf which are right and proper in the exigencies of their business—all such things as somebody must make up his mind, on behalf of the company, whether they should be done or not; and the fact that the company are absent and the person is there to manage their affairs is *prima facie* evidence that he

was clothed with authority to do all that was right and proper; and if he happens to make a mistake or commit an excess, while acting within the scope of his authority his employers are responsible for it."

It is also to be noted that the obligation to provide and maintain the device mentioned does not grow out of contract or depend upon invitation by the defendants. It is imposed by the statute. If the defendants had leased the building to another, with a stipulation that the lessee should keep the building in repair in all respects, including the elevator, and a tenant or a servant of the lessee had been injured because the elevator was operated without a suitable device to prevent its being started until the door or doors opening into the elevator-shaft were closed, the defendants would still have been liable as well as the lessee.

Under the circumstances shown, was not the question as to what instructions were really given by the defendants to the operator a question of fact to be passed upon by the jury? We think it was. Was it not a question for the jury whether the instructions authorized the boy, under the conditions shown —the displacement of the screen, with the attendant danger to passengers, as well as to the operator himself—to seek the assistance of the plaintiff, himself a passenger on the elevator, although his use as such of the same for the time being had just ceased when he alighted at the fourth floor? We can not say that it was not. If the authority was sufficient, then the plaintiff was on the top of the elevator by right, and was not a trespasser or mere interloper. In such case the rule is stated in Wood, Master and Servant, section 455, as follows: "A person who voluntarily and without any employment undertakes to perform a service for another, stands in the same relation as a servant for the time being, and is regarded as assuming all the risks incident to the business. And this is so, even though the service is not wholly voluntary, but is induced by request of a servant in the defendant's employ." See also *Johnson* v. *Ashland Water Co.*, 71 Wis. 553; *Wischam* v. *Rickards*, 136 Pa. St. 109; *Street Railway Co.* v. *Bolton*, 43 Ohio St. 224, 226; *Barstow* v. *Old Colony R. Co.*, 143 Mass. 535; *Osborn* v. *Knox R.*

*Co.*, 68 Me. 49; *Stevens* v. *Chamberlin*, 100 Fed. 378; *Penn. R. Co.* v. *Gallagher*, 40 Ohio St. 637; *Railroad* v. *Ward*, 98 Tenn. 123; *Mayton* v. *Texas, etc., R. Co.*, 63 Tex. 77.

In *Johnson* v. *Ashland Water Co., supra*, the court says (p. 556): "It is claimed by the learned counsel for the appellant that the complaint does not state a cause of action because it shows that the plaintiff was a mere volunteer in the work in which he was engaged at the time he received his injury. Under the allegations of the complaint the plaintiff was engaged in the defendant's work at the request of the man in charge of the work; and, although it may be said that his employment was for a mere temporary purpose, and that the plaintiff was not expecting any pay for the work done, and in that sense the employment was voluntary, still, being in the defendant's employment at the request of its servants or foreman, he was not a trespasser, and he was, for the time being, the servant of the defendant, and entitled to the same protection as any other servant of the defendant, and probably subject to the same risks of injury from the negligence of his fellow-servants. This seems to be the rule established by the authorities and is supported by considerations of justice."

Where an injury to a servant, who is free from contributory negligence, is caused by the concurrent negligence of the master and a fellow-servant, the master is liable. *Venbuvr* v. *Lafayette Worsted Mills*, 27 R. I. 89; *Weeks* v. *Fletcher*, 29 R. I. 112.

If the elevator had been equipped with a device which would prevent the elevator-car from being started until the door opening into the elevator-shaft had been closed, it would not have been possible for the plaintiff to go upon the top of the elevator when requested to do so by the operator, because the elevator could not have been dropped down, with the door open, so as to permit him to get upon the top. The operator testified that the elevator could be moved "if you put your finger on the button," and that the "safety button," as he called it, "was on the side of the door in the shaft the lock is on." He does not state whether the button was pressed, or whether the pressing of the button would detach the device only during

the time of its being pressed, or would detach it until means were taken to re-attach the device. If the elevator was equipped with a device to prevent the starting of the elevator while the door was open, and such device was in working order, it is evident that such button must have been pressed, and such pressure must have detached the device and left it unattached during the lowering of the elevator to a point where the plaintiff could get upon the top, as the operator could not have kept his finger upon the button while lowering the elevator to that position. It is evident also, from the testimony of the operator, that, if there was such a button, it was subject to his control, so that he could detach the device at will. If the plaintiff had not been on the top of the elevator when the operator started the same in response to the bell, he would not have been injured. He can not avail himself of the negligence of the operator against the defendants, because, for the time being, he was a fellow-servant with the operator. If, however, the negligence of the defendants concurred with that of the operator in causing the injury, the defendants would be liable. As was said in *Weeks* v. *Fletcher*, 29 R. I. 112, 115: "The neglect of the defendants, if it existed, was continuous and coincident in time with the act of the fellow servant."

The doctrine of assumed risk can not be received as a defence in this action. The statute provides: "It shall be no defence to said action that the person injured . . . had knowledge that any elevator was being operated in said building contrary to the provisions of this and the preceding section, or that such person continued to ride in said elevator with such knowledge." *Leahy* v. *U. S. Cotton Co.*, 28 R. I. 252, 255.

As was said by this court in *Weeks* v. *Fletcher*, *supra*, "Such language will bear no restricted construction. The act is for the benefit of all persons, whether in or out of the elevator, who are upon the landlord's premises as employees or by his invitation. If the neglect of any of its provisions causes damage to such person without his fault, the act gives him a right of action therefor."

The case should have gone to the jury on the questions of

the plaintiff's due care, and of the defendants' negligence.    The direction of a verdict for the defendants was error.

The plaintiff's exception is sustained, and the case is remitted to the Superior Court for a new trial.

*John W. Hogan and Philip S. Knauer,* for plaintiff.

*Vincent, Boss and Barnefield, and Alexander L. Churchill,* for defendants.